CHARLOTTE HANSEN, APPELLANT, v. WILLIAM H. MALLETT, APPELLEE.

FILED MAY 19, 1917.   No. 19121.

Trial: MISCONDUCT OF ATTORNEY. Aggravated misconduct of counsel in stating to the jury prejudicial facts outside of the record and in urging a disregard of the law applicable to the issues and proofs may require the reversal of a judgment on a verdict in his client's favor, though he was reprimanded by the trial court, and though the jury were directed to base their findings on the evidence and the instructions.

APPEAL from the district court for Cedar county: GUY T. GRAVES, JUDGE. *Reversed.*

*H. E. Burkett,* for appellant.

*R. J. Millard, contra.*

HAMER, J.

This is a bastardy case. There was a verdict in favor of the defendant, and plaintiff has appealed.

The plaintiff was the servant girl working for the defendant at his home. She began to work for him on or about September 22, 1913. She appears to have worked continuously until about Christmas, except one week in the latter part of October or the early part of November. On July 14, 1914, she gave birth to a child. At the time of the trial it was still alive. The claim is made that the plaintiff got in the family way on Friday night, about the middle of October, 1913. At that time the defendant's wife was away. She came back the next day. In November the defendant's wife appears to have been absent at Sioux City for the period of two weeks. It is claimed by the plaintiff that the defendant had intercourse with her during that time.

We do not care to discuss the details of the evidence. The view that we take of the matter is that there will have to be a new trial because of misconduct of counsel during the trial. Immediately after the plaintiff's father learned of his daughter's condition, the defendant went to the home of the plaintiff's father and there had a conversation with the plaintiff's father and mother. In this conversation he appears to have said, according to the evidence, that he was awfully sorry, and wanted to know if he could do anything for the plaintiff's father. He talked to the girl, and according to the testimony said: "Don't cry, Charlotte." The girl made accusations against the defendant in the presence of her father and mother, and recited something of what she claimed the defendant had told her about laying the blame on some boy. The defendant claimed that he was not the father of the child. There was an effort to lay the blame on the plaintiff's cousin, a boy 15 years old. There was also an effort to show that

another boy 16 years old had had sexual intercourse with the girl. There was an objection, and the testimony was excluded. The defendant's counsel in his argument to the jury said: "And you gentlemen of the jury are not going to believe that this red-haired defendant is the father of Charlotte Hansen's black-haired, black-eyed babe; and you know that when she swore that this red-haired defendant was the father of her black-haired babe she swore to a lie." Plaintiff's counsel objected to this, and the objection was sustained; but defendant's counsel proceeded: "Your verdict in this case will be either 'guilty' or 'not guilty.' While, strictly speaking, this is not a criminal case, it is, however, a quasi-criminal case, and the plaintiff must have more and better evidence than is required in a civil case." There appears to have been an objection to this, and the trial judge said: "The court will instruct the jury as to the law." Counsel for the defendant also said to the jury: "If I were a juror in a case like this, it would require more than a preponderance of the evidence. The evidence would have to be convincing beyond a doubt." Here there was an objection upon the part of plaintiff's counsel, but the court does not appear to have censured counsel for the defendant, and we are unable to find any instructions of the court to the jury telling the jury to disregard these remarks. Counsel for the defendant also said: "It is true that we did not prove that the plaintiff had sexual intercourse with other men, as I said we would in my opening statement; but I am here to tell you that this defendant is not the father of her child, and that some other man is." There was an objection to this, and the court sustained the objection; but he does not appear to have admonished counsel concerning the vehemence of his language. Counsel for the defendant does not seem to have retracted anything that he said. The address of counsel contained inflammatory statements having no foundation in the evidence, and he advocated a course at variance with law. This misconduct is assigned as error.

In *Birmingham Railway, Light & Power Co. v. Drennen*, 175 Ala. 338, Ann. Cas. 1914C, p. 1037, the court held: "Where, in argument, the plaintiff's counsel makes statements that are prejudicially erroneous, and the court, although sustaining the defendant's objection to the statements, does not exclude them or reprimand the counsel for using them, and the counsel does not retract the statements after the objection is sustained the trial court should grant a new trial."

In that case the bill of exceptions contained the following recitals: "Mr. Harsh, in making the closing argument for the plaintiff in the case, said to the jury: 'I know Hugh Morrow, and I know what I am going to tell you about him is true. I know that if he was on the jury trying this case that he would render a verdict in favor of the plaintiff in a large amount.' The defendant, by its attorney, * * * objected to the foregoing argument of plaintiff's counsel, and the court sustained the objection. At the time of making the objection, defendant's attorney stated to the court, in the presence of the jury, that the facts stated by Mr. Harsh were not in evidence, and were not true in substance and in fact."

The supreme court said: "This was clearly and wholly illegitimate argument. It was matter stated as a fact to the jury, of which there was no evidence, and of which fact evidence would not have been admissible, if offered. Its only tendency and effect was to prejudice the jury against the defense of the defendant, and against the sincerity of its counsel in so defending. Its natural tendency was to persuade the jury to render a verdict for plaintiff, because it was practically confessed by the attorney for defendant. It would be difficult to conceive of argument more objectionable, unfair, and prejudicial than was this, coming, as it did, in the closing argument, to which the defendant's counsel has no opportunity to reply. Courts should not allow verdicts obtained by such argument to stand. * * * This court on appeal, can only review the actions and rulings of the trial courts, and not those of

counsel; hence on the main appeal we cannot review the action of the trial court as to this matter, for the reason that his ruling, as far as invoked on the main trial, was in favor of appellant, and appellant cannot therefore assign it as error"—citing *Cutcliff v. Birmingham Railway, Light & Power Co.*, 148 Ala. 108, and other cases. The court further said: "But the defendant could and did assign, as ground for new trial, this illegitimate argument of plaintiff's counsel, which argument counsel failed to withdraw, or to attempt to correct the erroneous impression it may have produced upon the minds of the jury, and the trial court declined to set aside the verdict on this account; so, as to the new trial, he may assign such action as error. This court has repeatedly and in strong language condemned remarks of counsel less offensive and less offending than those used in this case, and has awarded new trials where the trial court failed or refused to take prompt and decisive action to eradicate such erroneous impressions, and has done this in cases even where counsel making such argument had done all he could to cure his error; that is, by retracting the offensive remarks."

The court held that it was error to refuse to grant the motion for a new trial. Subsequently the rehearing was denied February 17, 1912. This, therefore, is a recent case.

In *Wolffe v. Minnis*, 74 Ala. 386, the court said: "It is one of the highest judicial functions to see the law impartially administered, and to prevent, as far as possible all improper, extraneous influences from finding their way into the jury box." In that case, when the objection was made, counsel said, "Oh, well, I'll take it back;" but the reviewing court said, "Such remark cannot efface the impression. The court should have instructed the jury, in clear terms, that such remarks were not legitimate argument, and that they should not consider anything, thus said, in their deliberations."

In *Chicago, B. & Q. R. Co. v. Kellogg*, 55 Neb. 748, this court said, on the rehearing, as stated in the syllabus:

"But where the misconduct of counsel is so flagrant and of such a character that neither a complete retraction nor any admonition or rebuke from the court can entirely destroy its sinister influence, a new trial should be awarded regardless of the want of an objection and exception." In that case Judge Sullivan, delivering the opinion of the court, cited *Florence Cotton & Iron Co. v. Field,* 104 Ala. 471; *Bullard v. Boston & M. R. Co.,* 64 N. H. 27; *Rudolph v. Landwerlen,* 92 Ind. 34; *Tucker. v. Henniker,* 41 N. H. 317; and also two Nebraska cases.

In *Hughes v. City of Detroit,* 161 Mich. 283, the court said that the argument was inflammatory and prejudicial, and that it was cause for a reversal. In that case no allusion was made in the charge of the trial court to the improper argument of counsel. There had been an exception at the time the objectionable language was used. In that case counsel said: "Would you take all the money in the city of Detroit and have your sister go through with what this young woman has gone through with? * * * You have anybody crippled in the family, or where their usefulness is gone, and see how they stand the care, and wear away whatever affection there may be. *. * * As my associate said, you would not take that injury for all the money that could be piled up in front of us." It was held that the language used was "inflammatory and prejudicial." The court said: "It was cause for reversal"—citing many Michigan cases.

In *Sullivan v. Chicago, R. I. & P. R. Co.,* 119 Ia. 464, it was held that, where it reasonably appears that the verdict may have been influenced by improper remarks made by an attorney, a new trial should be granted. In *Bjoraker v. Chicago, M. & St. P. R. Co.,* 103 Minn. 400, it was held that, where the language used by the attorney in his address to the jury is not a fair comment on the evidence or anything remotely deducible from the evidence, an order of the trial court denying a motion for a rehearing will be reversed and a new trial granted.

In *Hall v. Wolff*, 61 Ia. 559, the objectionable language was: "Hall was not the party really interested in said case; that the real animus of the case was the desire of T. H. Read, president of the First National Bank, of Shenandoah, Iowa, to cripple and injure the intervener; that Mr. Bogart, to the great relief of the citizens of Shenandoah, had started a second bank there, and that Read was managing this case in the hope of destroying or injuring said bank; that Hall 'was only a cat's paw to lend the cloak of respectability to the case,' and that he had not retained the counsel who appeared for him, but that was furnished by Read's and other banks; that this was a test case, upon which depended all the other cases pending against Wolff, in which creditors were seeking to subject property held by this intervener under the sale in controversy." It was held that a new trial should have been granted by the trial court, and the judgment was reversed.

In *State v. Duncan*, 86 S. Car. 370, Ann. Cas. 1912A, p. 1016, it was said: "Within the four corners of the evidence, great latitude in argument is allowed. But it is the duty of the court, of its own motion, to check any departure from the record. And when abuse of the privilege of argument is allowed, against objection, to such an extent that it appears probable that the verdict was thereby affected, a new trial will be granted. The law guarantees every litigant a fair and impartial trial, and this has not been secured, where the verdict has been influenced by considerations outside of the evidence."

The misconduct of which complaint is made was clearly prejudicial, and prevented plaintiff from having a fair trial. For this reason, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

LETTON, J., not sitting.

SEDGWICK, J., dissents.