ELIAS J. HERSHISER, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED DECEMBER 14, 1918.    No. 20009.

1. **Appeal: PREJUDICIAL ERROR.** Errors may, or may not, be prejudicial, according to the circumstances of a case. If it is evident that the party complaining has not been prejudiced, that justice has been done, and the verdict is the only one which should be reached, errors which might in some cases justify a reversal will be disregarded as not prejudicial; but in a doubtful case, where the evidence is conflicting, errors which in another case might properly be disregarded may be prejudicial, since in such cases the minds of the jurors may be in such a state of doubt that a slight circumstance would turn the scale.

2. **Trial: INSTRUCTION: EVIDENCE BY DEPOSITION.** An instruction that "evidence taken by depositions is entitled to the same weight and consideration by the jury as though the witnesses were present in court," criticized.

3. **Evidence: BLOOD TEST.** Where it is sought to prove the result of a blood test, the testimony should negative the possibility of any interference with, or substitution of other blood for, the object of the test.

4. **Damages: LOSS OF EARNING CAPACITY: LOCALITY.** Where it is sought to prove damages accruing by reason of loss of wages and earning capacity of a plaintiff, the inquiry should be as to what he was able to earn in or near the locality where he lived, or was reasonably liable to exercise his calling, and it is error to admit evidence as to his earning capacity at a distant point in another state where he is not likely to labor.

5. Trial: ARGUMENT OF COUNSEL: PREJUDICIAL ERROR. A reference by counsel for the plaintiff in an argument to the jury to the fact that defendant is a railroad company and "has millions of dollars in its treasury" is improper, and, though an objection to same was sustained by the court, in a doubtful case this with other errors may be sufficient to require that a new trial be granted.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Reversed.*

*Byron Clark, Jesse L. Root* and *J. W. Weingarten,* for appellant.

*Gerald F. Harrington, R. M. Johnson* and *M. F. Harrington, contra.*

LETTON, J.

This is an action for personal injuries alleged to have been caused by the detention of the plaintiff in a freight car, whereby he became chilled and suffered a nervous shock and other injuries.

Plaintiff, who then lived at O'Neill, Nebraska, was about to remove to Mountain Grove, Missouri. He loaded his live stock and household goods into a box car, which was delivered by the Chicago & Northwestern Railway Company to the Chicago, Burlington & Quincy Railroad Company at Omaha, to be transported to Kansas City, there to be delivered to a connecting carrier. He accompanied the live stock as a caretaker. He testifies that while the train, of which the car was to form a part, was being made up in the yards of defendant, he was told by the conductor to get into the car and look after his live stock until the train was ready to leave the yards, when he would be notified, and permitted to ride in the caboose; that, after he entered the car, the door was pulled shut by himself and one of the trainmen; that it was fastened so that he could not get out, and he was not let out before the train left; that, though he tried repeatedly to attract attention, he was not released, and it was not until the next morning at a point in Missouri that he

succeeded in attracting. the attention of the conductor, and was released and taken into the caboose; that the weather was very cold and damp; that he became chilled, caught a severe cold, and sustained a serious nervous shock. The petition charges that as a result he became partially. blind, and has been unable to work since, or to walk, except by the aid of a cane, and his system has been permanently impaired and weakened.

The defendant admits the transportation of plaintiff as caretaker; alleges that he had the right to be transported either in a car containing his moveables, or in the caboose; that he exercised his right to ride in the freight car; and that whatever injuries he may have suffered were caused by his own negligence and by risks which he assumed. The plaintiff recovered a verdict for $12,000, and defendant appeals.

Defendant filed a petition and bond for removal of the case to the district court of the United States for the northern district of Illinois, on the ground of diverse citizenship, alleging that the plaintiff was a citizen and resident of the. state of Missouri, and that the defendant is a corporation existing under the laws of Illinois, and with its office and principal place of business in Cook county in. that state. The court found that plaintiff is a resident and citizen of Missouri, and that defendant is a resident and citizen of Illinois, and that therefore the case is not removable. This ruling is the first point assigned as error. The federal decisions do not seem to be entirely harmonious under such facts. *Ex parte Wisner,* 203 U. S. 449; *Park Square Automobile Station v. American Locomotive Co.,* 222 Fed. 979; *Ex parte Park Square Automobile Station,* 244 U. S. 412.

Having in view the fact that the final determination of this interesting question must of necessity be made by the supreme court of the United States, we are reluctant to hold that the trial court erred in refusing

to send the case to the federal court of Illinois, and therefore do not sustain the defendant's contention in this regard.

Much of the important testimony on behalf of plaintiff was given in the form of depositions, and some of that for defendant was taken in the same form. The court gave the following instruction: "The jury are instructed that, as to the depositions offered and received in evidence, it is the evidence of witnesses taken as by law required, and that evidence taken by depositions is entitled to the same weight and consideration by the jury as though the witnesses were present in court and testified to the facts contained in the depositions of the said witnesses." In addition to this, the ordinary instruction was given that, in determining the weight to be given to the testimony of the several witnesses, the jury should consider their conduct and demeanor while testifying, their opportunities for seeing or knowing the things about which they testify, etc.

Appellant insists that the above instruction is prejudicially erroneous. A jury may be somewhat prone to give less consideration to evidence read to them from depositions than to that of witnesses who appear in open court. In order to guard against this tendency, cautionary instructions of this nature are sometimes given, and it is generally held that they are not erroneous. *Coburn v. Moline, E. M. & W. R. Co.*, 243 Ill. 448, 134 Am. St. Rep. 377; *Olcese v. Mobile Fruit & Trading Co.*, 211 Ill. 539; *Hillis v. Kessinger*, 88 Wash. 15.

An early Indiana case, *Carver v. Louthain*, 38 Ind. 530, took a contrary view; but in *Voss v. Prier*, 71 Ind. 128, this case was practically overruled, the court saying: "We may know, as a matter of fact derived from common observation, that testimony communicated in the form of deposition does not generally make so decided an impression on a jury as that orally given

in open court, but the law does not as a rule recognize the inferiority of testimony embodied in depositions, to testimony given orally at the trial."

The weight of authority seems to justify an instruction of this general nature, but we think the statement that "evidence taken by depositions is entitled to the same weight and consideration by the jury as though the witnesses were present in court" is not strictly accurate. *State v. Howard,* 118 Mo. 127, 143; *Mann v. Darden,* 6 Ala. App. 555; *Thompson v. Collier,* 170 Ala. 469. The jury is deprived of all the indicia of truth or falsehood furnished by facial expression, demeanor, the look of the eye, hesitation or glibness of speech, and other criteria by which ordinary men are aided in determining the truth or falsity of statements made. Recognizing this defect in such evidence, the statute wisely provides that depositions can only be used when the attendance of witnesses cannot be procured.

This court has repeatedly pointed out the great advantage that a trial court has in the ascertainment of truth, when it has the witness before it, over a reviewing court, and always gives consideration to this advantage. It is only when the evidence before the trial court is in the form of depositions that it is considered that a reviewing court has an equal opportunity in this respect. Upon another trial the statement as to the "weight" to be given such testimony should be omitted, and the jury told in substance that testimony given in the form of depositions should receive the same fair and impartial consideration as if it had been given by witnesses in open court.

The wife of plaintiff was allowed to testify, over the objections of the defendant, when she was married, and to state the number of their children. In an action for personal injuries, it is immaterial whether a plaintiff is married or single, or whether he has any children or

not. The only purpose such an inquiry could have, would be to affect the sympathies of the jury. The matters inquired of were irrelevant to the issues, and the objections should have been sustained. *Pennsylvania Co. v. Roy*, 102 U. S. 451, 459.

A medical witness testified that the plaintiff was suffering from locomotor ataxia. Realizing that this condition may have resulted from a constitutional disease, plaintiff had procured the Wasserman test for the presence of syphilis to be applied to a quantity of his blood drawn for the purpose of the test. It appeared from the evidence of the doctor making the test that the blood, from the time it was drawn until the time the test was applied, was in the ice box of the laboratory, and that others besides himself has access to the laboratory, and that it would have been possible to have substituted another sample for Mr. Hershiser's blood.

On redirect examination the witness testified that the only persons who had access to the blood were men associated with him in his office; that he made no change in the blood himself; and that no one in his office did so to his knowledge. Defendant moved to strike the testimony as to the test, for the reason that the possibility of a substitution of blood was not precluded by the facts shown. The motion was overruled, and this is assigned as erroneous. As a general rule, the probability of any tampering with the objects of such tests should be negatived before evidence of this nature is admitted. The only persons who had access to the laboratory were those associated with the doctor. It would have been better to prove that the bottle and its contents had been absolutely undisturbed by any one except the witness; but since another blood test was made under proper conditions, with the same result, under the circumstances it was not prejudicial error to retain this testimony.

In testifying as to his earning capacity, the plaintiff was allowed, over the objections of the defendant, to testify to the wages he earned when he worked at O'Neill at carpenter work several years before. This is the only evidence as to the value of his work. His residence was at Mountain Grove, Missouri, 400 or 500 miles distant. In *Omaha & R. V. R. Co. v. Ryburn*, 40 Neb. 87, it was held that evidence of wages paid in a locality other than that of plaintiff's residence was erroneous. In that case, however, proof was given as to earning capacity of the plaintiff at his place of residence, and, since the result of the error could with reasonable certainty be estimated, the court required a remittitur of the excess. Plaintiff has pointed out no evidence in the record as to what an able-bodied man would earn at the plaintiff's trade in the locality of Mountain Grove, Missouri. If another trial is had, the inquiry should be as to wages in that locality.

In the argument to the jury, one of plaintiff's counsel said, among other things: "He does not ask you men to bring in a verdict for him against the railroad company just because it is a railroad company; he does not ask to have them pay him $60,000, or any other amount that you men think is right, just because it is the Chicago, Burlington & Quincy Railroad Company, and has millions of dollars in the treasury." This was objected to as not proper argument, and the objection was sustained. A number of other improper remarks made by the counsel for plaintiff were objected to. The objections were sustained by the court in the main. The quoted statement was grossly improper, and should not have been made. It is to be doubted whether the mere fact that the court sustained the objection to this and other improper statements removed the poison thus injected.

A number of affidavits as to newly discovered evidence were submitted in the motion for a new trial. We

think these alone were not sufficient to justify the setting aside of the verdict, and yet they are sufficient to indicate that more light may be thrown upon the issues if a new trial be had.

At the close of all the testimony, defendant requested the court to direct a verdict in its favor, which request was refused. This request was based upon the contention that the evidence is not sufficient to sustain a verdict. The instructions generally were as favorable to the defendant as it was entitled to ask, and seem in the main very fairly and impartially to present its theory of the case. The court gave the following instruction: "You are instructed that, upon the plaintiff's testimony, his sole right to recover is based upon his alleged statement that defendant's servants so closed and fastened the car door after plaintiff went into said vehicle that he could not depart therefrom, and upon this point the burden of proof is upon the plaintiff to satisfy you from a preponderance of the evidence that the door to said car was thus secured by defendant's servants after plaintiff went into said car, and, if he has failed to produce such preponderance of evidence, your verdict should be for the defendant."

We are not prepared to say that there is not sufficient evidence to sustain a verdict; but there are so many improbabilities in the testimony of the plaintiff, and it is so strongly contradicted by other testimony, that errors which might not under some conditions of evidence justify a reversal, may have been sufficient to turn the scale in plaintiff's favor, and to prejudicially affect the substantial rights of the defendant.

A brief résumé of a part of the testimony may be interesting in addition to that already set forth: Plaintiff testified that when, at Omaha, the door of the car was shut by himself and one of the trainmen, it rebounded and left a crack of about an inch or three-fourths, out of which he could see; that at the first

stop, which he thought was at Council Bluffs, he called out, shook the door, and tried to get it open, but could make no one hear, and that he did this whenever the train stopped; that when he loaded the car he fastened the other door securely, and left an open space of about four inches to furnish air to his stock; that about one or two hours before daylight the conductor heard his cries, took him out, and put him to bed in the caboose; that he was then shaking and shivering with cold; that he was sick from that time on; and that his physical disabilities resulted from this exposure.

On cross-examination he testified that his furniture and boxes were loaded in the ends of the car, and the live stock faced the center; that there were four head of horses, three on one side and one on the other, and five head of cattle; the horses were in stalls, and the cattle not tied, but penned in; there were two hogs and a large number of chickens.

He does not remember whether he complained to the conductor who went to St. Joseph or Kansas City about having been confined in the car. He made no complaint to the railroad company's agent at Mountain Grove, and never made any claim against the defendant on this account until about three years after the transaction. He denies getting out of the car at Pacific Junction, but admits that he had some intoxicating liquor with him on the trip. He says that he had the lantern lit at first, but it went out; that no conductor came to his car or put a punch mark into his contract until at St. Joseph. He denies specifically that the conductor came to him before the car crossed the bridge near Omaha, and that he exhibited his contract and had it punched; he testified that the chicken crates obstructed his view out of the other door of the car, but he could see by looking around them, that he could tell when they came to a city by the lights, if they came on that side, but there were no lights on that side. On

redirect, he testified that he had a pint bottle and half a pint bottle of whisky with him, but that he did not drink any of it during the trip.

On the part of the defendant it was shown that a live stock contract (Exhibit 1) was delivered to the plaintiff in Omaha; that he kept it until he reached Kansas City, when he delivered it to a clerk of the connecting carrier, who testifies he placed it in the original files, and took it from that repository to produce at the trial. The night yardman at Omaha testified that he saw plaintiff in the yards that night; that he was under the influence of liquor; that he went with him to his car and helped him in; that he then fastened the door, leaving an opening about one or two feet wide; and that plaintiff never mentioned wanting to ride in the caboose.

Another employee, not now in the employment of defendant, testified that he saw plaintiff and the preceding witness that evening, and at that time plaintiff looked as though he was under the influence of liquor. A conductor testified that this car was in his train; that the first stop out of Omaha was at Gibson, which is the end of the Omaha yards, and is on the west side of the Missouri river; that the train then continued on the west side of the river until it reached Plattsmouth, where it crossed the river, and that the end of the run was at Pacific Junction, Iowa; that at Gibson he spoke to the man in the emigrant car; that he procured exhibit 1, the live stock contract, from him, and made two punch marks in it in connection with the words, "Omaha Division;" that the door was open about a foot and a half or two feet, and there was a light in the car; that after he punched the contract he handed it back, and had not seen it again until he saw it in court. Exhibit 1 shows No. 28572 as a car of emigrant moveables in that train. The man who was night yardman at Pacific Junction in February, 1912, testified that train No. 14 comes into Pacific Junction as a mixed

train; that this train is usually left close to the depot until train No. 72 arrives from the north, when it is taken apart, and cars going south are attached to train No. 72; that he saw the occupant of car No. 28572 that evening, who asked where he was, and whether he had time to get out and get something to eat; that he told him they were at Pacific Junction, and that there was a lunch counter at the depot; that the man got out and went to the depot; that he was a little intoxicated; that witness asked him if he wanted to go to his car, or to the caboose; that he said, "No, I want to stay in the car, I have got a good place to lie down there, and I want to stay there;" that he took him to the car; that the door was fixed so as to remain open about fifteen or twenty inches, maybe two feet; that there was a kerosene lantern burning in the car.

It was shown by United States weather observers that the temperature at Omaha and St. Joseph that night varied from 29 to 31 degrees above zero. Three other witnesses testified to seeing plaintiff in the lunch counter at Pacific Junction, giving facts to corroborate their testimony as to time and identity. The testimony of one of these witnesses for defendant seems to us of very doubtful credibility.

It seems difficult to believe that a vigorous man could not have made himself heard out of a car with a door fastened open for a space of four inches, expecially when the car stood on a side track near a station for more than an hour.

The case was carefully tried in the main; but it is so doubtful whether the plaintiff should recover at all, that the verdict may well have been influenced by some of the errors pointed out. We are inclined to the view that the verdict was the result of passion and prejudice. Whether this is so or not, we believe that justice demands a new trial.

REVERSED.

Rose, J., not sitting.