R. T. COOPER V. STATE OF NEBRASKA.

FILED JANUARY 16, 1931. No. 27372.

*Bartos, Bartos & Placek,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

DAY, J.

The plaintiff in error, R. T. Cooper, who will hereinafter be designated as defendant, was charged with forging the name of "George Vana" on the back of three checks and with uttering the three forgeries. He was convicted of the three forgeries, but was found not guilty of uttering the forged indorsements. At the time of the alleged offenses and for a number of years prior thereto, the defendant was employed by Black Brothers Milling Company, as agent and manager of their elevator at De Witt. As such agent and manager he had authority to buy grain and to pay for the same with their checks, and he is charged with issuing three checks to one "George Vana," which represented no actual transaction, and forging "George Vana" upon said checks. The defendant entered a plea of not guilty and upon a trial he was convicted of the forgeries as above

stated. The plaintiff in error presents to this court for review the record of his conviction.

The defendant urges a reversal of the judgment of the trial court for that it was prejudicially erroneous for it to refuse to grant a continuance of ten days for the defendant to prepare for trial. Summarized, the reasons urged for a continuance by the defendant were: His inability to raise money to pay his attorneys; their refusal to proceed without their fee; and his inability to secure other counsel. It is also shown that, although diligent in his efforts, only two days were left after procuring counsel to prepare for trial. The record also discloses that the complaint was filed in the county court on November 18, 1929, and that on November 23, 1929, he was arrested and taken before said court; that, represented by the same attorney who represented him upon the trial, he sought and was granted a continuance until November 27, 1929, to prepare for the preliminary hearing; that upon the hearing numerous witnesses were examined. The record further discloses that the books of Black Brothers, which were made by him, and which he complains he was unable to properly inspect and examine, were in court at that time. It does not appear that he was prevented from an examination of them at any time. From November 27, 1929, defendant was at liberty on bond and his trial did not occur until January 13, 1930. He did not appear for trial at this session of the court as required by his bond, neither on December 20, 1929, nor on January 6, 1930, and his bond was forfeited. Upon giving a new bond on the same day, the forfeiture was vacated and his trial set for January 13. He did not then apply for the appointment of an attorney as provided by statute for indigent persons charged with criminal offenses.

Every person accused of crime and his attorney are entitled to reasonable time in which to prepare for trial after the prosecution is commenced. What is a reasonable time in which to prepare for trial after the prosecution is commenced must be determined from all the facts and circumstances of the particular case. 16 C. J. 449. The trial

judge in a criminal prosecution must determine in each case, from the facts and circumstances presented therein, what is a reasonable time for such preparation. In overruling a motion for a continuance in such a case, the trial court exercises a discretion, which is not reversible error unless it appears that there was an abuse of discretion. *Dilley v. State,* 97 Neb. 853; *Becker v. State,* 91 Neb. 352; *Welsh v. State,* 60 Neb. 101; *Taylor v. State,* 86 Neb. 795; *Hanks v. State,* 88 Neb. 464; *Ringer v. State,* 114 Neb. 404. Applying the rule herein stated to the facts delineated in the instant case, it is obviously apparent that the trial court did not abuse its discretion in overruling the motion for a continuance, and that the defendant was not prejudiced thereby.

There is criticism of the instruction of the court to the jury on the question of reasonable doubt. The defendant asserts that the instruction as given limits the reasonable doubt to the evidence adduced and excludes reasonable doubt arising from the lack of evidence. It is true that the defendant was entitled to the benefit of any reasonable doubt arising from the lack of evidence. However, the jury were instructed by other instructions that evidence was required to prove defendant guilty beyond a reasonable doubt before they could find him guilty. This would indicate to the jury that a lack of evidence would create this doubt. Heretofore we have said: "The court did not say that a reasonable doubt, to authorize an acquittal, must be one arising from the evidence alone, but merely told the jury that to produce an acquittal it must be a reasonable doubt arising from a candid and impartial investigation of all the evidence in the case. If the jury did that, it would reveal to them any lack of evidence to sustain a conviction, and if any such want of evidence was found there could be no conviction." *Bartley v. State,* 53 Neb. 310, 360. The omission of which complaint is made in the present instance is not necessarily reversible error. *Hiller v. State,* 116 Neb. 582. In a recent opinion it was said: "It is not incumbent upon the court in every case to instruct the jury that a reasonable doubt may arise from want of evidence

in the case, though, if requested so to do, such instruction should be given." *Trimble v. State,* 118 Neb. 267. In this case the defendant did not request an instruction covering this phase of the question and the instructions as a whole fairly protect the rights of the defendant. For the same reasons the other assignments of error predicated upon the failure of the trial court to give requested instructions is without merit, because the instructions given by the court covered the entire case and properly submitted the issues to the jury.

Misconduct of the assistant county attorney in his argument to the jury is assigned by the defendant as reversible error, because he contends the statements were prejudicial and not warranted by the evidence. The argument in question was made by an attorney appointed by the court to assist the county attorney. The judges of this court are unanimous in their opinion that the argument of the attorney was misconduct on his part. There is a difference of opinion as to whether or not the misconduct of counsel was prejudicial to the defendant. It is necessary to a discussion of the question that we set out the statements and argument of counsel to which defendant excepts. In the course of the state's closing argument to the jury, the special assistant to the county attorney spoke as follows:

"As you go along here, to arrive at your verdict, gentlemen, you are going to do one of two things; you are going to convict Bob Cooper of forgery and uttering this forged instrument on every count, or else you are going to convict Mr. Sherman, that fine old gentleman here, of perjury, lying from this witness-stand. You are either going to convict Bob Cooper of forgery, or else you are going to convict Frank Havlovic of perjury. You are either going to convict Cooper of forgery, or else you are going to convict all of these witnesses that we had on the stand of perjury."

The writer is of the opinion that the remarks quoted are not justified by the evidence; that they were prejudicial and inflammatory. We do not find it justified in the books. In fact, there is no justification for the above language. It was not the province of the jury, either directly or indirect-

ly, to find that the above mentioned witnesses were guilty of perjury. To acquit the defendant would not have so found. Even taking the most favorable view possible, the credibility of the witnesses is only one element to be considered by the jury. It is also their duty to determine their accuracy in observing and remembering; to consider whether they are biased or prejudiced in connection with the case; and their means of knowing the matters concerning which they testify. The state's attorney knew this and his conduct in making said argument was reprehensible and unfair. It was his duty as well as the duty of the trial court to surround the trial with an atmosphere of fairness, undisturbed by prejudice, passion or ill will. *Bourne v. State,* 116 Neb. 141. "It is the duty of the prosecuting attorney to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, no matter how guilty, in his opinion, defendant may be; and this rule applies to special counsel assisting the prosecuting attorney." 16 C. J. 886.

Let us consider the fairness and impartiality of the special counsel assisting the county attorney. The foregoing quotation was soon followed in the same argument by this: "Now, why does Bob Cooper lie about that if he is this little ignorant farmer boy?" To which timely objection was made by defendant's counsel. Thereupon the court rules as follows: "The word 'lie' isn't a very pleasant word, it doesn't sound very well, but counsel is permitted to use any argument that is adduceable from the evidence, and if he happens to use a word that doesn't sound particularly euphonious, it is not grounds for objection if it is based on the evidence, of course." The evidence does not justify the statement, augmented and strengthened by the ruling of the court. The evidence was in conflict and presented a question of fact for the jury. Then followed with some intervening sentences this statement: "This man came in here and he needed cash, and so Bob digs down in his pocket, this man that is working for a hundred dollars a month, understand, and, my gracious! he has unlimited cash. You could tell that by the clothes he wore up here. I

wear the same suit all week, and he comes in with a fine brown suit on Monday and the next day a suit of dark blue. Mrs. Cooper takes the stand, she has furs on, a fine coat and dress. He is ready with everything on this hundred dollars a month. And so Bob—" Timely objection was made to the remarks about dress, for that it was prejudicial, which was overruled by the court. Can it be that in this state the kind of clothes a man and wife wear should be reason to convict him of forgery? Certainly not, unless there is some connection shown by the record between the forgery and the clothes. The record in this case does not reveal any such connection.

From this we pass to the impassioned peroration of the state's attorney. Here it is: "You are going to say, 'Bob Cooper, you are guilty on count one; Bob Cooper, you are guilty on count two; Bob Cooper, you are guilty on three and four and five and six,' or else you are going to publish to all the people in this courtroom and to Bob Cooper's neighbors around there in that county that Fred Sherman, that fine old gentleman, committed perjury from this witness-stand, that Frank Havlovic committed perjury from this witness-stand, that Louis Skrdla, who is one of Bob Cooper's best friends, committed perjury from this witness-stand, and that George Vana, another friend, committed perjury from that witness-stand, or that his good friend, William Kreuscher, committed perjury from that witness-stand—one of the most infamous crimes that a man can commit. Now, take your choice, gentlemen, convict Bob Cooper who has been plainly shown guilty by this evidence, or convict these innocent men, among the very salt, the very best, we have in Saline county, of testifying falsely under oath from this witness-stand." The defendant's attorney objected to this last statement as prejudicial and not warranted by the evidence. Thereupon the court rules as follows: "It may reasonably be deduced. I suppose counsel is allowed considerable latitude." Timely and almost continual objection was made to this line of argument, but it continued throughout the trial, with the apparent acquiescence and approval of the court. The court should have

stopped this line of argument, reprimanded the attorney, and at least have instructed the jury to disregard it. See *Argabright v. State,* 62 Neb. 402.

This court has recently reversed the judgment and remanded civil cases for retrial for the misconduct of the attorney in his argument to the jury. In *Hall v. Rice,* 117 Neb. 813, this was done. Judith Hall had brought action against defendants Rice and the Liggett Company, a corporation, for damages for false imprisonment and slander. A judgment on the verdict for $5,000 was reversed because plaintiff's attorney referred to the defendant company as "a corporation without any feeling or soul," as a "big corporation," as consisting of 440 stores, as "rich clients," and to the witnesses for the defendant as "New Yorkers." The language of that opinion is so applicable here that we quote at length, beginning with the quotation from *Ashland Land & Live Stock Co. v. May,* 59 Neb. 735, which is as follows: "We have little patience with counsel who deliberately seek to achieve success by lawless methods; and we do not hesitate, in any case, to deprive them of advantages thus obtained. In the performance of professional duties, counsel should endeavor always to conform their own conduct to the law which they have been commissioned to assist in administering." The court then continues in the application to the case under consideration, as follows:

"In the trial of every contested lawsuit, there is abundance of opportunity, growing out of the material facts and circumstances of the case, for the display of extraordinary talent and the exercise of adroitness and finesse without resort to illegitimate methods tending only to arouse the passion and prejudice of the jury. It is of greater importance that the administration of justice be regular and orderly, than that counsel be afforded an opportunity to exhibit their peculiar prowess in the use of questionable methods.

"We are not able to determine what influence, if any, the improper argument of counsel had upon the jury, but it was well calculated to distract their attention from the real issues, and the refusal to grant a new trial on this ground was prejudicial error."

See, also, *Lewis v. Beckard,* 118 Neb. 533, and *Johnson v. Jensen,* 118 Neb. 1. The more recent cases are in line with the decisions of this court. *Hershiser v. Chicago, B. & Q. R. Co.,* 102 Neb. 820; *Hansen v. Mallett,* 101 Neb. 339; *Young v. Kinney,* 79 Neb. 421; *Courier Printing & Publishing Co. v. Wilson,* 3 Neb. (Unof.) 136; *Chicago, B. & Q. R. Co. v. Kellogg,* 54 Neb. 127, 55 Neb. 748; *Stratton v. Nye,* 45 Neb. 619; *Patterson v. Hawley,* 33 Neb. 440; *Cleveland Paper Co. v. Banks,* 15 Neb. 20. In the case of *Hansen v. Mallett, supra,* the court quotes the following language, with approval, from *Birmingham Railway, Light & Power Co. v. Drennen,* 175 Ala. 338: "Where, in argument, the plaintiff's counsel makes statements that are prejudicially erroneous, and the court, although sustaining the defendant's objection to the statements, does not exclude them or reprimand the counsel for using them, and the counsel does not retract the statements after the objection is sustained, the trial court should grant a new trial." In *Patterson v. Hawley, supra,* this court, by Maxwell, J., said: "All appeals to the jury upon matters outside of the case tend to defeat the due administration of justice, and any statement of an alleged fact outside of the evidence prejudicial to one of the parties may be sufficient to cause a reversal of the judgment. A court of justice does not condemn unheard, nor upon *ex parte* statements of opposing counsel, and it will not permit one of its officers to abuse his position by such unauthorized statements." In *Cleveland Paper Co. v. Banks, supra,* this court said, in the opinion by Maxwell, J.: "The rights of parties are to be determined from the evidence, and an attorney in arguing a case to a jury must confine the discussion of facts to those proved. If he can be permitted to make assertions of facts, or insinuations of the existence of facts, not supported by the proof, there is danger that the jury will lose sight of the issues or be influenced by misstatements to the prejudice of the other party. Where such statements are improperly made *prima facie* they are prejudicial, and may be sufficient to cause the reversal of the case. * * * In our opinion, therefore, the statement was so far prejudicial as to demand a new trial."

The misconduct of counsel in the above cited cases was mild compared to the flagrant and reprehensible misconduct in this case. In a criminal case, the defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. This presumption of innocence is a matter of evidence in favor of the defendant, and continues throughout the trial until he is found guilty from the evidence beyond a reasonable doubt, after a trial surrounded with an atmosphere of fairness, undisturbed by prejudice, passion or ill will. If the rule as to misconduct of counsel was properly applied in the recent cases of *Hall v. Rice, supra,* and *Lewis v. Beckard, supra,* which were civil cases to recover damages, then it ought to be applied with equal force to criminal cases wherein life and liberty are at stake. We assume that, in the above cited cases, the jury were properly instructed, since the opinion of the court does not pass upon any question as to the propriety of instructions. It is urged by the state that, since the jury were properly instructed as to the issues, the verdict must have been based upon the evidence considered in the light of the instructions, uninfluenced in their conclusion by the misconduct of counsel. To the charge of the information, the defendant entered a plea of not guilty. He took the stand and contradicted the testimony of witnesses for the state. The guilt or innocence of a defendant in a criminal case is a question of fact to be determined by the jury. *Hall v. Rice, supra.* We are unable in this case to determine what influence, if any, the improper argument of counsel had upon the jury, but it was well calculated to distract their attention from the real issues. It was intended to influence them, or at least to distract their attention from the real issues. The record establishes that it was a deliberate, persistent attempt on the part of the state's attorney to prejudice the jury against the defendant. It was capable of fulfilling its intended purpose.

It is regretted that the judgment of the trial court must be reversed, necessitating another trial of this case. Violators of the criminal laws should be vigorously prosecuted, but there is a vast difference between legitimate prosecu-

tion and appealing to prejudice and passion and popular clamor to obtain a conviction. Trial judges and public prosecutors are charged with the duty of conducting criminal trials in such a manner that the accused may have a fair and impartial trial, uninfluenced by prejudice, passion and public clamor. The defendant in this case did not have such a trial and the judgment is

REVERSED.

ROSE, J., dissenting.

I concur in the admirable exposition of the majority opinion which shows there was no prejudicial error in the record from the beginning of the long trial below until the assistant prosecuting attorney made his argument to the jury, but I take radical exception to the reversal on the ground of his misconduct.

Without perversion of the truth and the law a conviction was inevitable. Setting aside the only just and proper verdict that could have been rendered under the evidence does not inflict punishment on the offending attorney who abused his privilege in addressing the jury but does visit his misconduct on the innocent public and does cast reflections on the administration of justice.

It is a strange anomaly of the law, as administered by the majority, that juries are permitted to determine from evidence the momentous issues of liberty and imprisonment and at the same time and in the same prosecution are not trusted to discriminate between mere argument containing intemperate and unwarranted language of a prosecuting attorney and truthful testimony of disinterested witnesses under oath.

Where the entire record of a criminal prosecution clearly shows that misconduct of the prosecuting attorney in addressing the jury did not mislead them in arriving at their verdict of guilty or prejudice accused, the reviewing court should treat such misconduct as harmless error as directed by the statute which declares:

"No judgment shall be set aside, or a new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or

rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Comp. St. 1929, sec. 29-2308.

I made "an examination of the entire cause," and I say with conviction there was no prejudicial error or miscarriage of justice in the proceedings and sentence. Under the evidence a verdict of not guilty would have been a travesty on justice and a reproach to the law.

Defendant, R. T. Cooper, was charged with forging the name of "Geo. Vana" on the back of each of three bank checks which were drawn by "Black Bros. Flour Mills Elevator, by R. T. Cooper," in favor of "Geo. Vana," on the "Farmers & Merchants Bank, DeWitt, Nebraska," and were payable at the "First National Bank, Beatrice, Nebr." The dates of the checks and the amounts were respectively as follows: October 22, 1928, $55.80; October 29, 1928, $55; November 15, 1928, $59.16. For a number of years, including those dates, defendant was an agent of Black Brothers and in that capacity managed for them an elevator at DeWitt. He had authority to buy grain for them there and to pay for it with their checks. The truth of the charges was proved beyond a reasonable doubt. Defendant testified in his own behalf and admitted that he drew the checks; that he indorsed Vana's name on the back of each; that he banked the checks in his own name; that he received the proceeds. In explaining these remarkable transactions he testified in effect that Vana delivered three loads of wheat at the elevator and that each check represented the price of a load; that two of the loads were received in payment of feed or grain formerly purchased by Vana who received payment for the third load in cash from defendant personally; that defendant indorsed the name of Vana with the latter's consent; that it was defendant's custom, known to his employers, in these and other like transactions, to indorse on the back of the check the name of the payee; that he did so without any attempt to imitate the payee's handwriting; that he

settled with his employers for what he owed them. Tested by business standards the defense was preposterous and from the standpoint of the law it was a device to defeat justice. Existence and knowledge of such a custom were disproved. Attempts to imitate handwriting in making indorsements were evidenced by comparison with genuine signatures. The loss fell on defendant's employers and not on Vana who became a disinterested witness. He testified positively that he never bought or delivered grain at the De Witt elevator; that the checks did not represent the price of wheat sold or delivered by him and that they were not issued or used in any actual transactions with him; that he did not authorize the indorsement of his name on the checks. Moreover, the De Witt elevator was approximately five miles from his farm, while he was served by another elevator near his home. To prove criminal intent several other disinterested witnesses, whose names had been likewise indorsed by defendant on checks, testified in substance that they did not authorize the indorsements and that the checks were not connected with any actual transaction in which the fictitious payee and indorser participated.

In the light of evidence that proves guilt with unerring certainty, as it does in this case, why should jurors be suspected of resorting to obvious unfair argument in arriving at their verdict? The unwarranted statements reproduced in the majority opinion and the cruel remarks concerning the faithful wife who appeared in court on behalf of her husband in a time of peril reacted against the prosecution without harming the accused. Indignation that moved reviewing judges did not escape the jurors. The trial court not only treated the objectionable statements of counsel as argumentative matter, as shown by the rulings on objections, but the jury were instructed in writing that, in coming to any conclusion, they should be governed alone by the evidence in the light of the instructions; that they had no right to indulge in speculations, conjectures or inferences not warranted by the evidence. They were also directed to entirely disregard any remarks of counsel not warranted by the evidence. The misconduct condemned by the majority had nothing to do with the verdict.

On the record for review, "after an examination of the entire cause," as required by statute, I "consider that no substantial miscarriage of justice has actually occurred." The statutory rule was enacted in 1921 to prevent reversal of righteous convictions for harmless, technical errors. Laws 1921, ch. 157, sec. 1. In justifying the reversal by citing and following the old practice which the legislature changed, the majority, in my opinion, have impaired, if not destroyed, remedial legislation essential to the safety of the law-abiding public in the present state of lawlessness. Entertaining these views, I solemnly protest against the adoption of the majority opinion and the reversal of the conviction in this case.