JAMES DOBRY V. STATE OF NEBRASKA.

FILED DECEMBER 6, 1935. No. 29358.

*O'Sullivan & Southard* and *Frank C. Charvat,* for plaintiff in error.

*William H. Wright, Attorney General, Paul P. Chaney* and *Lester A. Danielson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

CARTER, J.

The plaintiff in error, who will be referred to herein as the defendant, was convicted in the district court for Colfax county of first degree murder and sentenced to life imprisonment in the penitentiary. From the overruling of his motion for a new trial, the defendant prosecutes error to this court.

The evidence in this case shows that the defendant was a farmer living about nine miles north of Schuyler. He was 70 years of age at the time in question and had lived on the farm by himself since his wife died six or seven years before. Adolph Dobry, a son of the defendant, lived

across the road and approximately two blocks east. In addition to Adolph Dobry's family, one Katherine Vondra was boarding and rooming at the Adolph Dobry home and teaching in the country school near-by. The deceased, William Henesh, had been keeping company with Katherine Vondra for some time and it was shown to be his custom to take her back and forth to and from her home in Schuyler over the week ends. William Henesh was about 36 years of age and was employed in the power plant at Schuyler on night work. The record shows that on Sunday, January 28, 1934, the deceased took Katherine Vondra to the Adolph Dobry home at about 8:15 in the evening, after which he immediately left in order to go to work. At about 8:30 the automobile of the deceased was seen on fire off of the main highway and within two miles of the home of the defendant. About 20 minutes later, Henry Jonas and Joe Bohac, farmers living near-by, investigated and found the blazing body of the deceased behind the steering wheel of the burning car. The next day it was discovered by an examination of the body that deceased had been shot through the heart, the bullet lodging in the spine.

The testimony of Katherine Vondra was to the effect that she was 29 years of age and had taught school in the district where the defendant lived for four years. She testified that the defendant took her back and forth from her home to the Adolph Dobry home during the last two months of the second year she taught, and during the school year of 1933. She also testified that the defendant proposed marriage to her in the spring of 1933 and that she refused him. She further testified that on September 17, 1933, defendant offered her the sum of $5,000 if she would marry him. On a subsequent occasion, she says that defendant told her that Henesh was no good, that he was deaf and that she would have to support him if she married him. She also testified that, on or about January 17, 1934, defendant inquired of her if she had married Henesh as yet, and that she answered him in the negative; that defendant then said, "If you hear of something terrible happening,

don't be surprised." Many other conversations with defendant were detailed relative to her marrying Henesh and the possibility of her marrying the defendant, which we will not discuss in detail. Practically all the evidence given by Katherine Vondra was denied by the defendant.

The record also shows by the evidence of Clement Dudek, a hardware dealer in Schuyler, that on January 19, 1934, the defendant came into his store and obtained a revolver and nine cartridges. Dudek saw defendant on January 22, 1934, at which time defendant said he was taking a trip and would pay for the use of the gun. On January 30, 1934, two days after the murder of William Henesh, the defendant brought the gun back, saying that he had returned from his trip on the preceding Saturday but had been unable to bring the gun back because of illness. He also stated that he did not want any one to see him return the gun. Dudek testified that no shells were returned with the gun.

The state produced the evidence of ballistic experts to the effect that the bullet found in the body of William Henesh was fired from the gun which the defendant obtained from the witness Dudek. The defendant produced the evidence of an expert to the effect that, in his opinion, the evidence bullet could not have been fired from the gun in question.

The testimony of the defendant was to the effect that he was home at the time the murder was committed; that he had nothing to do with it and did not know of its occurrence until two days later; that he did get the gun in question from Dudek to defend himself from possible holdup, the fear of which had been brought about by a previous attempt to hold him up; that he did not tell any one about having the gun, not even his son, although he practiced shooting with it and retained it for more than a week; that he did not have any of the conversations with the witness Katherine Vondra that she testified to, and that they were all untrue.

It was shown in the record that the statements made by

the defendant, while an investigation of the crime was being conducted, differed in many respects with the testimony he gave on the stand. This is the testimony, in substance, upon which the jury found the defendant guilty.

The defendant first contends that the trial court erred in overruling the objections filed to the appointment of Joseph C. Cook as assistant prosecutor. The record shows that L. F. Otradovsky, the county attorney of Colfax county, testified that relatives of the deceased did talk to him with reference to obtaining assistant counsel to prosecute the case. He further testified that he exercised his own judgment in recommending Cook and suggested his appointment to the court upon his own initiative. Cook testified that he had not known the relatives of the deceased prior to the inquest, that Colfax county alone was paying for his services, and that the matter of a civil action had never been mentioned by the relatives of the deceased. We are unable to find anything in the evidence produced in support of the objections which shows that the appointment of Cook in any way prejudiced the rights of the defendant. The approval of the suggested appointment by the county attorney was addressed to the sound discretion of the trial judge, and an abuse of that discretion not appearing from the record, error cannot be predicated thereon. *Barr v. State*, 114 Neb. 853, 211 N. W. 188.

The defendant next contends that the trial court erred in not admitting certain evidence to the effect that the deceased generally carried a gun, that he was known to carry large sums of money on his person, and that the deceased had stated that certain persons unknown to him were "after him to take his life." The statements in question were alleged to have been made by the deceased more than a year prior to the death of William Henesh. We are inclined to the view that such statements were too remote in time even if they might otherwise be competent. As to their competency, we believe the rule to be that statements made by a deceased to a witness that third persons, unknown to him, had threatened his life are inadmissible as

hearsay. The evidence in the case at bar was wholly circumstantial, and it cannot be denied that defendant had the right to produce any competent evidence that another committed the crime. But, in the absence of any evidence to connect a third person with the crime, proof of a motive on the part of a third person to kill the deceased was not admissible to exculpate the defendant. In *Wallace v. State,* 46 Tex. Cr. Rep. 341, 81 S. W. 966, the court said: "We do not believe it was competent for the appellant to prove that deceased, Austin, had certain enemies, and that he was apprehensive of harm from them. The evidence was too remote; the rule being that, before testimony of this character is admissible, the evidence must tend at least in some degree to show that such other person did the killing. The mere fact that other parties may have entertained feelings of hostility or ill will or had made threats against deceased, will not be sufficient." To the same effect are *Commonwealth v. Kosh,* 305 Pa. St. 146, 157 Atl. 479; *State v. Patrick,* 48 N. Car. 443; *Goodlett v. State,* 136 Ala. 39, 33 So. 892. We therefore conclude that the trial court rightfully rejected the testimony complained of. There was no competent evidence in the record tending to connect any third person with the crime, and, in the absence thereof, the proposed testimony of defendant would at most create a bare conjecture.

Defendant contends that the trial court erred in refusing to give a requested instruction dealing with the credibility to be given to the testimony of police officers, detectives or others employed to detect crime. The only witnesses to whom the instruction could apply were R. H. McDonald and Calvin H. Goddard, called by the state as expert witnesses for the purpose of proving that the bullet found in the body of the deceased was fired from the gun that defendant had in his possession at the time of the murder. We know of no cases that hold that expert witnesses, hired to give technical evidence to a jury, are within the scope of the rule for which defendant contends. The purpose of a rule requiring the trial court to instruct, upon request, relative

to the credibility and weight to be given to the evidence of private detectives and informers is to protect the person charged with crime from the overzealous efforts of such persons in obtaining evidence, especially when they are paid only for the results of their labors. We know of no reason why an expert, testifying as to his technical knowledge of a subject involved in the litigation, should be placed within the scope of such a rule. The trial court rightfully refused to give the proffered instruction.

The defendant complains that the evidence was not sufficient to sustain the verdict. While the evidence is circumstantial, there can be no question as to its sufficiency to sustain the verdict. It would be impossible for us to detail all the evidence pointing to the defendant as the perpetrator of the crime. We have carefully read the record, and we doubt if any jury, conscientious in their efforts to find the facts and apply the law thereto, could come to any other conclusion. The defendant contends that the crime was a two-man job and that the defendant could not have committed the murder by himself. The jury apparently discarded this theory of the defense and, the evidence thereon being far from convincing, the finding of the jury is conclusive on that point. Defendant also contends that the evidence of the expert produced by him to prove that the evidence bullet was not fired from the gun in the possession of the defendant at the time of the murder and the many photographs and other exhibits produced by him conclusively establish the fact that the bullet was not fired from the gun in possession of the defendant and are sufficient to absolve him from the crime. To this we cannot agree. The evidence of a witness skilled in ballistics is ordinarily technical in its nature, and the conclusion drawn is an opinion based upon that technical knowledge.

The credibility of each witness produced as one skilled in ballistics and the weight to be given to his testimony are matters that are clearly within the province of the jury to determine. It cannot be said that any one of these skilled witnesses is, as a matter of law, entitled to have his opinion

treated as a conclusively established fact. This is a matter that is within the province of the jury and, they having arrived at a conclusion upon contradictory evidence, their finding will not be disturbed. In the case of *Evans v. Commonwealth*, 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360, the testimony of witnesses skilled in ballistics is well considered. In that case the testimony of Calvin H. Goddard, a witness skilled in ballistics, was set out at length and its competency upheld by the supreme court of Kentucky. Goddard was a witness in the case at bar and his testimony was along the same lines as therein detailed, so much so that we consider the case of *Evans v. Commonwealth, supra,* authority for the submission of such evidence to the jury for their consideration as to its weight and credibility.

The defendant further complains of the conduct of the assistant prosecutor in his closing argument to the jury. The record discloses that, in several parts of his closing argument, the assistant prosecutor made remarks to the jury to the effect that, to clear the defendant, they must convince you that Katherine Vondra is a liar and a perjurer, that the sheriff is a liar and a perjurer, and that other witnesses deliberately falsified. Complaint is also made of the statements of the assistant prosecutor designating the defendant as a murderer, in the following language: "If they succeed in turning a murderer loose in the face of this evidence * * * then let the very walls of this courthouse fall. I again say to you twelve men, shall you make it unsafe for the assassin to do his business in your county?" Objections to these statements were duly made and overruled by the trial court. Counsel for defendant did not move for a mistrial on the ground of the misconduct of the assistant, but did request an instruction with reference thereto, which was given by the court. This instruction is as follows: "You are instructed that it is not necessary for you in order to arrive at a verdict of not guilty in this case to find any witness or witnesses guilty of perjury and such an argument should not be indulged in by you in

arriving at a verdict in this case, as no such question or questions is or are involved in this inquiry."

We are of the opinion that the objections made by the defense should have been sustained by the trial court. The conduct of the assistant prosecutor, in the respects noted, was anything but commendable. The question is whether, in the light of the instructions given by the trial court, the conduct of the assistant prosecutor was such as to require a retrial of this case. This court has held that trial judges and public prosecutors are charged with the duty of conducting criminal trials in such a manner that the accused may have a fair and impartial trial, uninfluenced by prejudice, passion and public clamor. *Cooper v. State,* 120 Neb. 598, 234 N. W. 406. To this we might add that every officer of the court is charged with the duty of conducting criminal trials in such a manner that both the state and the accused may have a fair and impartial trial, uninfluenced by prejudice, passion and public clamor.

In the case at bar, the question for the jury to determine was which of the witnesses were telling the truth. The very nature of the evidence was such that it could not all be true. The proper choice of words in an extemporaneous argument to a jury is not always within the immediate comprehension of counsel. To argue that a witness is or is not telling the truth is considered proper argument, but to argue that a witness is a liar and a perjurer, while often accomplishing the same result, is quite often objected to as improper. We fail to see why one is any more objectionable than the other from a legal standpoint. Of course, if the jury got the idea from the argument that by acquitting the defendant they would thereby brand or convict Katherine Vondra and other witnesses as perjurers, it would certainly constitute prejudicial error. But in this case the court instructed the jury that such was not the case. Unless the error complained of was prejudicial to the rights of the defendant, the cause should not be reversed, particularly in view of section 29-2308, Comp. St. 1929, which is, in part, as follows: "No judgment shall be set aside, or new trial granted,

or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

In *Melcher v. State,* 109 Neb. 865, 192 N. W. 502, this court, in reference to this statute, said: "This statute was doubtless enacted for the very purpose of furnishing to this court express lawful authority to deny the reversal of a case for just such matters as are involved in the above complaints, where, after an examination of the entire case, it shall appear that no substantial miscarriage of justice has actually occurred. We have examined the whole case and are of the opinion, not only that no miscarriage of justice occurred in finding the defendant guilty as charged, but that a palpable miscarriage of justice would have occurred, had the jury found otherwise."

We conclude that the evidence of the state was ample to sustain the conviction of this defendant. We further conclude that the remarks of the assistant prosecutor, viewed in the light of the instruction given, did not mislead the jury in arriving at their verdict and that they constitute harmless error. We are also convinced that the jury arrived at the only logical conclusion possible in this case, and if a new trial were granted, the result would undoubtedly be the same. A defendant cannot be said to be entitled to a new trial because of a technical error in the record, where his guilt is established by the evidence, merely for the purpose of giving another jury an opportunity to err in its judgment to the advantage of the defendant. The error must be prejudicial to defendant's rights. We are not saying that defendant should have moved for a mistrial because of the misconduct of counsel for the state, in order to preserve the error, but nevertheless he did not do so. Instead, he requested an instruction informing the jury to disregard the alleged prejudicial statements. The defendant, having requested the instruction, cannot now complain

of the form in which it was drawn. He then proceeded to take his chances with the jury as to the outcome. After offering the instruction, with full knowledge of the nature of the errors intended to be corrected thereby, and which he deemed sufficient to accomplish that result, he now, after an unfavorable verdict, contends that it was so prejudicial that it could not be cured by instruction. While we agree that there are certain errors that cannot be cured by a court's instruction, yet where the defense assumes that the error may be corrected by instruction and requests one to that effect, which is given, instead of moving for a mistrial, and then proceeds to submit his case to the jury, he is not in a position to urge error. Under this situation, he has waived his right to complain. He cannot proceed to go to the jury with the alleged error cured or attempted to be cured by an instruction he himself has tendered, and, upon obtaining an adverse verdict, set up that the error was not cured, in order to obtain a second chance before the jury.

With reference to the alleged misconduct of the assistant prosecutor in referring to the defendant as a murderer and an assassin, we are of the opinion that it was not prejudicial error under the situation as it existed in this case. The statements hereinbefore quoted followed a general summation of the evidence and are conclusions that could readily be inferred from the facts. There was no personal belief expressed that the defendant was a murderer or assassin. From the facts previously detailed it was fairly deducible that the defendant was a murderer and assassin. Under such circumstances, the prosecutor may state conclusions which are predicated upon the evidence. This does not mean that such statements may not constitute error if made for purposes of vilification or vituperation. Such does not appear to have been the situation in the case at bar. In *Holt v. State*, 91 Ark. 576, 121 S. W. 1072, the court said: "Counsel for the state denounced the defendant in argument as an 'assassin and cold-blooded murderer.' The language, at most, could only have been accepted by the jury as the opinion of the zealous prosecutor from his view-

point of the evidence. The jury had heard all the evidence, and they were sworn to form their opinion from the evidence and the law applicable thereto. It is not probable that a sensible jury would mistake the denunciation of zealous counsel for proof in the case, and be misled thereby to appellant's prejudice. * * * From the standpoint of the state, such opinions as the prosecutor expressed were reasonable and legitimate deductions, to be drawn from the evidence." The statements in the case at bar fall within the rule therein expressed and we conclude that they do not constitute prejudicial error.

After a consideration of the whole case, we have concluded that no error prejudicial to the rights of the defendant appears in the record, and the judgment is therefore

AFFIRMED.