STATE OF NEBRASKA, APPELLEE, V. JEFFREY A. HARKER,
APPELLANT.

498 N.W.2d 345

Filed January 12, 1993.    No. A-91-1005.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

This is an appeal from the criminal jury trial of Jeffrey A. Harker, appellant. He was charged with the crime of robbery, Neb. Rev. Stat. § 28-324 (Reissue 1989). A jury convicted appellant of robbery, and appellant was later sentenced to an indeterminate term of 4 to 8 years' imprisonment. Appellant contends on appeal that the trial court erred in failing to sustain a motion for mistrial regarding testimony elicited from a State's

witness and a motion for mistrial regarding appellee State's closing argument. We affirm.

## FACTUAL BACKGROUND

### TRIAL TESTIMONY

Charlotte O'Neill, the victim, testified that in January 1991 she resided in an apartment complex at 6725 North 51st Court in Omaha. At approximately 1 a.m. on January 30, she was sleeping in her apartment with her daughter when she heard a knock on the door. She went to the door and asked who was knocking, and the person responded by giving the name "Jeffrey" and asking whether Stanley was there. The victim replied in the negative, but allowed the individual, appellant, who was an acquaintance of hers, to come into the apartment. Appellant had asked to use the phone and stated that it was cold outside. The victim had been introduced to appellant by her boyfriend, Stanley Reliford. She understood appellant to be Reliford's cousin. She had met appellant four or five times prior to January 30, while he was with Reliford.

The victim testified that appellant walked to the phone, dialed, and apparently spoke to someone on the other end of the line. The victim testified that appellant then walked behind her, picked up a piggy bank, hit her over the head with it, and then picked her up and punched her in the jaw a couple of times. She testified that he then grabbed her video cassette recorder and ran out the door.

The victim testified she then ran to the phone and summoned help. She also called Reliford to get appellant's last name. The victim was bleeding from the head when the rescue squad arrived. She testified that she was taken to the hospital, where her head was shaved and bandaged and she was given a tetanus shot. She was discharged at about 4 o'clock in the morning.

The victim further testified that at about 6 or 7 p.m. on the day of the assault, a police officer had come by with a photo array from which she selected photo No. 2 as being a picture of appellant. She then proceeded to make an in-court identification of appellant as her assailant. On cross-examination, the victim was asked for a description of the clothing her attacker had worn, which description she supplied.

The next witness to testify was William Lindsey, the police officer who displayed the photo array to O'Neill. When asked to identify an exhibit, Officer Lindsey referred to it as the photo array shown to the victim, adding that it consisted of eight police "mug shot photos." Defense counsel then objected and moved for a mistrial due to the use of the term "mug shot." The court overruled the objection. Officer Lindsey indicated that photo No. 2 was of appellant.

Appellant was called as the sole witness for the defense. He testified that he had seen the victim on about 7 or 8 days during January 1991 and that during that time he had become intimate with her on a couple of occasions. Appellant denied having been in the victim's apartment on the night in question, denied having hit her, and denied having taken her video cassette recorder.

On cross-examination, appellant admitted having been convicted of a felony within the past 5 years.

The victim was called as a rebuttal witness, and she denied appellant's claim that there had been intimate relations between them.

## CLOSING ARGUMENT

In his initial closing remarks, the prosecutor told the jurors that they either had to believe the victim's version or had to believe that she was lying. There was no objection to this assertion. In his final summation, the prosecutor stated that if the jury acquitted appellant, it would be saying by its verdict that the victim had committed perjury. Defense counsel then interposed an objection and moved for a mistrial on the basis of improper argument. The objection was sustained, and the statement was stricken from the record, but the motion for mistrial was overruled. The prosecutor continued his argument, stating that to find appellant not guilty, the jurors had to believe the victim had lied. Defense counsel again objected, but the objection was overruled. The prosecutor then concluded by stating that it was a matter of whether the jury was going to believe the victim or appellant.

The jury found appellant guilty of robbery. Appellant timely moved for a new trial. Officer Lindsey's mention of mug shots

and the prosecutor's closing argument were both referred to in the motion. The motion was overruled on August 14, 1991. Appellant was subsequently sentenced to 4 to 8 years' imprisonment.

Appellant has timely filed this appeal.

## ASSIGNMENTS OF ERROR

Appellant assigns two errors. The first is that the trial court erred in failing to grant a mistrial, based on the assertion that the prosecution's closing argument misstated the law and had the effect of shifting the burden of proof to appellant. The second assigned error is that the trial court erred in failing to grant a mistrial because a witness for the prosecution referred to photographs in a photographic lineup as mug shots.

## GENERAL RULES RELATING TO MISTRIALS

The determination of whether to grant a motion for mistrial lies within the discretion of the trial court. *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). "A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial." *Id*. at 56, 395 N.W.2d at 557-58. "Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of other incompetent matters are examples of occurrences which may constitute such events." *Id*. at 56, 395 N.W.2d at 558. On the other hand, "[e]rror cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material." *Id*. Accord, *State v. Ross*, 220 Neb. 843, 374 N.W.2d 228 (1985); *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984).

## PROSECUTOR'S CLOSING ARGUMENT

Appellant argues that a mistrial should have been granted because of a misstatement of the law on the part of the prosecutor during closing argument, which statement appellant claims had the effect of shifting the burden of proof to appellant.

In the prosecutor's initial summation to the jury, the prosecutor said, "[W]hat it boils down to is you either believe Charlotte O'Neill or Charlotte O'Neill came in here and lied to you for whatever reason. It's that simple." There was no objection to this statement. The defense attorney then presented his closing argument. During the prosecutor's final summation, the following argument was made: "I told you that you had a duty to follow the law and follow the evidence. And if you do that, you will find Mr. Harker guilty of robbery. If you don't, what you're saying in your verdict is that Charlotte O'Neill came in here and committed perjury." This time defense counsel objected and moved for a mistrial. The objection was sustained, and the court ordered the statement stricken from the record. However, the motion for mistrial was overruled. Immediately thereafter, the prosecutor continued, "You have to believe in order to find Mr. Harker not guilty, that Charlotte O'Neill for whatever reason came in here and lied to you." Defense counsel objected to this statement, and the objection was overruled.

Prior to the start of closing arguments, the court instructed the jury that, among other things, summation gives counsel "the opportunity to urge upon you, to ask you, to recommend to you that you adopt certain inferences or certain conclusions which you may do as long as they are supported by evidence." The court further instructed that "their statements now just as their opening statements are not evidence."

"The general rule is that remarks made by the prosecutor in final argument which do not mislead or unduly influence the jury do not rise to a level sufficient to require granting a mistrial." *State v. Fraser*, 230 Neb. 157, 162-63, 430 N.W.2d 512, 515 (1988). Quoting from *State v. Wounded Arrow*, 207 Neb. 544, 300 N.W.2d 19 (1980), in *State v. Bradley*, 236 Neb. 371, 400, 461 N.W.2d 524, 544 (1990), the court said,

> "Before it is necessary to grant a mistrial due to prosecutorial misconduct, the defendant must show that 'a substantial miscarriage of justice has actually occurred.' " . . . Similar standards are applicable where one seeks a new trial by raising on appeal the issue of prosecutorial misconduct. . . . [I]f there is some incorrect

conduct in a jury trial which, on review of the entire record, did not materially influence the jury in its verdict adverse to a substantial right of the defendant, the error is harmless.

(Citations omitted.)

" 'Whether misconduct on the part of a prosecuting attorney is prejudicial to the defendant depends largely upon the facts of each particular case.' " *State v. Ellis*, 208 Neb. 379, 398, 303 N.W.2d 741, 753 (1981). Whether curative measures were taken to reduce or eliminate the impact of improprieties at trial is a factor to be considered in determining whether a mistrial should have been granted. *State v. Greeno*, 230 Neb. 568, 432 N.W.2d 547 (1988).

"The impact of any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his decision will not be overturned unless clearly erroneous." *State v. Benzel*, 220 Neb. 466, 477-78, 370 N.W.2d 501, 511 (1985).

## FACTUALLY SIMILAR CASES

In *Cooper v. State*, 120 Neb. 598, 234 N.W. 406 (1931), the prosecution made remarks similar to those in the case before us. In his closing argument, the State's attorney argued as follows:

"You are going to say, 'Bob Cooper, you are guilty on count one; Bob Cooper, you are guilty on count two; Bob Cooper, you are guilty on three and four and five and six,' or else you are going to publish to all the people in this courtroom and to Bob Cooper's neighbors around there in that county that Fred Sherman, that fine old gentleman, committed perjury from this witness-stand, that Frank Havlovic committed perjury from this witness-stand, that Louis Skrdla, who is one of Bob Cooper's best friends, committed perjury from this witness-stand, and that George Vana, another friend, committed perjury from that witness-stand, or that his good friend, William Kreuscher, committed perjury from that witness-stand—one of the most infamous crimes that a man can commit. Now, take your choice, gentlemen, convict Bob Cooper who has been plainly shown guilty by

this evidence, or convict these innocent men, among the very salt, the very best, we have in Saline county, of testifying falsely under oath from this witness-stand."

*Id.* at 604, 234 N.W. at 408-09. The court expressed disapproval of this line of argument, stating, "The [trial] court should have stopped this line of argument, reprimanded the attorney, and at least have instructed the jury to disregard it." *Id.* at 604-05, 234 N.W. at 409. The court explained:

In a criminal case, the defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. This presumption of innocence is a matter of evidence in favor of the defendant, and continues throughout the trial until he is found guilty from the evidence beyond a reasonable doubt, after a trial surrounded with an atmosphere of fairness, undisturbed by prejudice, passion or ill will.

*Id.* at 607, 234 N.W. at 410. In addition to believing that the prosecutor's argument sought to excite undue passion and prejudice against the accused, the court was also concerned about the inaccuracies in the prosecutor's remarks, stating:

It was not the province of the jury, either directly or indirectly, to find that the above mentioned witnesses were guilty of perjury. To acquit the defendant would not have so found. Even taking the most favorable view possible, the credibility of the witnesses is only one element to be considered by the jury. It is also their duty to determine their accuracy in observing and remembering; to consider whether they are biased or prejudiced in connection with the case; and their means of knowing the matters concerning which they testify. The state's attorney knew this and his conduct in making said argument was reprehensible and unfair.

*Id.* at 602-03, 234 N.W. at 408.

The potential burden-shifting impact of such an argument was discussed in *United States v. Vargas*, 583 F.2d 380 (7th Cir. 1978). In that case, the prosecutor had argued that if the jury acquitted, then it was saying that the federal agents who testified against the accused were lying. With regard to this summation, the court said:

Even assuming that the testimony of the prosecution

and defense witnesses contained unavoidable contradictions, it of course does not follow as a matter of law that in order to acquit Vargas the jury had to believe that the agents had lied. If the jurors believed that the agents probably were telling the truth and that Vargas probably was lying—or even if the jury was convinced that all of the agents [except one named] were telling the truth and thought that [the named agent] probably was telling the truth—it would have been proper to return a verdict of not guilty because the evidence might not be sufficient to convict defendant beyond a reasonable doubt. To tell the jurors that they had to choose between the two stories was error.

*Id*. at 387.

This type of closing argument has come before the Supreme Court since *Cooper*. Later cases have stated that similar argument was permissible or that if similar argument was not permissible, it did not constitute reversible error for the reason that curative instructions were given to the jury or because of the weight of the evidence against the defendant. *Dobry v. State*, 130 Neb. 51, 263 N.W. 681 (1935), decided a few years after *Cooper*, is one of these cases.

*Dobry* was a first degree murder case. On appeal, one of the claims was that the misconduct of the prosecutor during the course of summation warranted a new trial. In his closing, the prosecutor had made several remarks to the effect that to acquit the defendant, the defense had to convince the jury that the State's witnesses were liars and perjurers. Objections to these statements had been lodged, but overruled. Defense counsel did not move for a mistrial, but, instead, requested the court to instruct the jury that it was not necessary to find that any witness had committed perjury before it could acquit. The request was granted by the court, and the jury was so instructed. Although acknowledging that the objections to the summation should have been sustained, the appellate court indicated that the question before it was whether the instructions of the trial court sufficed to resolve the problem.

In the case at bar, the question for the jury to determine was which of the witnesses were telling the truth. The very

nature of the evidence was such that it could not all be true. The proper choice of words in an extemporaneous argument to a jury is not always within the immediate comprehension of counsel. To argue that a witness is or is not telling the truth is considered proper argument, but to argue that a witness is a liar and a perjurer, while often accomplishing the same result, is quite often objected to as improper. We fail to see why one is any more objectionable than the other from a legal standpoint. Of course, if the jury got the idea from the argument that by acquitting the defendant they would thereby brand or convict Katherine Vondra and other witnesses as perjurers, it would certainly constitute prejudicial error. But in this case the court instructed the jury that such was not the case. Unless the error complained of was prejudicial to the rights of the defendant, the cause should not be reversed, particularly in view of section 29-2308 [the harmless error statute] . . . .

*Dobry*, 130 Neb. at 59, 263 N.W. at 685. The court concluded that the substantial evidence of the defendant's guilt and the curative instruction to the jury rendered the prosecutor's remarks harmless error.

A similar analysis was applied in *Girtman v. Lockhart*, 942 F.2d 468 (8th Cir. 1991), a federal habeas corpus case in which the petitioner alleged that his trial counsel had rendered ineffective assistance in failing to object to the prosecutor's incorrect statement in summation to the jury to the effect that the defense had the burden of proving self-defense. The court determined that the failure to object was not prejudicial, since

we have held that even if the prosecutor misstates the law, such an error is harmless where, as here, "[t]he trial court properly instructed the jury to consider only the evidence, and further advised that statements and arguments of counsel are not evidence." *United States v. Yancy*, 688 F.2d 70, 72 (8th Cir. 1982).

*Girtman*, 942 F.2d at 474.

Another Nebraska case on this topic, but with seemingly harsher prosecutorial remarks, was *Cramer v. State*, 145 Neb. 88, 15 N.W.2d 323 (1944). A defendant convicted of first degree murder in the poisoning death of his 1-month-old child raised

several claims on appeal. One was that reversible misconduct occurred when the prosecutor argued to the jury that only two people could have been involved in the deed; that by pleading not guilty, by inference, the defendant was accusing his wife of murdering their child; and, additionally, that if the jury acquitted the defendant, then the wife would be, by inference, branded as the child's murderer. In response to this defendant's claim, the court said:

> We do not think this line of argument constitutes error. The statements were deductions that could properly be made from the evidence. Each statement complained of contained within it language showing that it was a mere inference to be drawn from the evidence. It is not probable that a jury sworn to try the case on the evidence and the law applicable thereto would mistake the argument of counsel as evidence, or be misled thereby to defendant's prejudice.

*Id.* at 99, 15 N.W.2d at 329. The trial court had admonished the jury that the attorneys had the right to discuss the facts and inferences and that it was up to the jury to decide if those facts and inferences were correct.

APPLICATION TO THE PRESENT CASE

The present case is distinguishable from *Cooper*. Although the prosecutor did make reference to having to find that the victim was a perjurer in order to acquit, the court immediately sustained an objection to that statement and ordered it stricken from the record.

Although the court did not orally reprimand the attorney or instruct the jury to disregard the remark, as the *Cooper* court suggested should be done, the result was achieved via a different route. The first instruction given to the jury included the directive that "[y]ou should not consider any evidence which has been stricken from the record." The jury was also instructed that "[y]ou should not be influenced by statements of counsel not supported by the evidence." The fourth and fifth instructions to the jury covered appellant's presumption of innocence and the prosecution's burden of proving his guilt beyond a reasonable doubt, a burden which never shifts. Prior

to the commencement of closing argument, the court instructed the jury as to what counsels' function would be during summation and included the caveat that their statements were not evidence. These instructions clearly mitigated any impact the improper portion of the argument may have had.

The prosecutor reworded his argument and asserted, as he had before and no objection was made by appellant, that in order to acquit, the jury would have to find that the victim came into court and lied. An objection to this remark was then made and was properly overruled. In the factual context of this case, this remark was not the egregious type of assertion contemplated by previously cited case law as necessitating a mistrial. The victim was an eyewitness, and there was no question about whether she had adequate foundation for her testimony. The defense raised no confabulation theory as a result of the victim having been struck on the head, such as that raised in *State v. Broomhall*, 221 Neb. 27, 374 N.W.2d 845 (1985). It was not a case where the facts presented were subject to more than one interpretation. A reasonable inference from the evidence presented was that either the accused or O'Neill was lying, and it was within the scope of proper argument for the prosecutor to encourage the jury to make the determination of which version was the credible one.

## MUG SHOT TESTIMONY

Appellant states in his brief that Officer Lindsey's testimony amounted to inexcusable conduct on the part of the prosecution to present evidence of previous crimes by appellant.

Relying on *State v. Atwater*, 193 Neb. 563, 228 N.W.2d 274 (1975), appellant urges that the conviction should be reversed. In that case, a State's witness referred to obtaining mug shots for a photo lineup. He then went on to state, in response to questions from the prosecution, that these photos had been obtained from the files of the " 'Robbery Detail Office,' " which files contained photos of known robbers or robbery suspects. *Id*. at 565, 228 N.W.2d at 275. Atwater was being tried for robbery.

The reference to mug shots in the case before us was different from *Atwater*. First, the testimony indicates that the use of the

term "mug shot" was inadvertent. It certainly was not the result of direct examination, as in *Atwater*. Second, there was no inference created, as in *Atwater*, that appellant was previously involved with the same type of offense. The dialog in the instant case is similar to that in *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989). In that case, the following exchange took place at trial:

"Q . . . [O]n the day of the robbery were you asked to come to Omaha Police Headquarters and take a look at some photographs of some people?

A Yes, I was.

. . . .

Q Do you remember how many photographs you looked at that day?

A I looked at books and then at some little pictures.

Q Like mug books?

A Yeah.

Q So a lot of photographs?

A Yes."

*Id.* at 781-82, 438 N.W.2d at 139.

The court concluded that "[t]his incidental reference does not amount to prosecutorial misconduct." *Id.* at 782, 438 N.W.2d at 139.

Additionally, the potential for suggesting prior criminal activity in the case before us was minimized by the fact that the photographs were undated and the fact that the display was shown to the victim several hours after the incident had occurred. Appellant could have been arrested in this span of time following the offense. His photograph could have been taken in the interim. The police having a photo of appellant did not necessarily imply that he had been arrested for other incidents in the past.

Appellee accurately states that there are technological limitations on photographic lineups. The police must do all they can to minimize any suggestion of prior bad acts, charged or uncharged, by a defendant. Eliminating booking placards and other indicators that a photo is in fact an arrest photo must be accomplished. Such was done in this case. The unsolicited reference to the term "mug shot" in this case does not

necessitate the trial court's granting a motion for mistrial.

## CONCLUSION

Denying these motions was not an abuse of discretion by the court. Therefore, the conviction and the sentence of appellant are affirmed.

AFFIRMED.