STATE OF NEBRASKA, APPELLEE, V. PHILIP FAHLK, APPELLANT.
510 N.W.2d 97

Filed December 28, 1993.   No. A-92-1180.

422

David A. Domina and Denise E. Frost, of Domina & Copple, P.C., for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

SIEVERS, Chief Judge, and HANNON and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Philip Fahlk appeals his jury convictions of theft by unlawful taking and of obstructing government operations. For the reasons recited below, we affirm the judgment of the district court for Otoe County.

## FACTS

The record reflects that Fahlk was employed as the superintendent of the Nebraska City public schools beginning July 1, 1991. Fahlk found that his immediate duties included the negotiation of teacher contracts for the 1991-92 school year and the preparation of the yearly budget for the Nebraska City public schools. Fahlk testified that when he began his work, there was no computer equipment available to him. Fahlk brought his own ImageWriter printer to work with him and borrowed an Apple IIc computer from an elementary school. The school district later borrowed computer equipment from an office equipment store for Fahlk's use, including an ImageWriter II printer.

On August 22, 1991, the school district received a shipment of three new ImageWriter II printers intended for use at the

senior high school. The printers, valued at $398.90 each, were delivered to the building in which Fahlk's office was located. Jodi Rathe, an administrative assistant and bookkeeper for the school district, testified that she signed an invoice to acknowledge delivery of the printers. She stated that three large boxes containing the printers were placed in the kitchen area of the superintendent's building. When she arrived at work the next morning, only two boxes remained.

William Lambrecht, curriculum coordinator for the Nebraska City school system, testified that he arrived for work at the superintendent's building at 7 a.m. on August 23, 1991, at which time he noticed three computer boxes in the kitchen. He stated that when he returned to the kitchen at 7:20 a.m., he saw only two computer boxes. Lambrecht testified that Fahlk was in the kitchen at that time.

Lambrecht and Rathe conducted a search for the missing printer in the kitchen area. Rathe then inquired among other employees of the building to determine whether anyone had borrowed the printer. Because Fahlk was attending a breakfast meeting at another building, Rathe left a note on Fahlk's desk explaining the situation with the printer and asking if Fahlk had any knowledge of the printer's whereabouts. Fahlk returned from the meeting before noon, but he did not respond to the note. Rathe testified that she obtained the serial numbers of the three printers, determined which one was missing, and asked Fahlk if he knew of anyone who might have the printer. Rathe said that Fahlk indicated that he remembered seeing three printers in the kitchen area when he came to work that morning but that he had no knowledge of who might have taken the missing printer.

Rathe stated that when she spoke to Fahlk, she had a piece of paper with the three serial numbers written on it. Rathe explained to Fahlk that she had placed a checkmark next to two of the numbers, while the third number, corresponding to the missing printer, had no checkmark next to it. Fahlk agreed with Rathe's suggestion to call the police, apparently doing so when Rathe briefly left his office. Rathe testified that after Fahlk left the building to travel to Lincoln, she again reported the theft to the police "[j]ust to check." According to Rathe, she then

discovered that in reporting the theft, Fahlk had given the police a serial number which corresponded to one of the remaining printers. Vickie Rhoades, dispatcher for the Nebraska City Police Department, testified that Fahlk reported a missing printer with the serial number "TF1280337%" but that Rathe later called and reported the correct serial number, "TF1280FN%." At trial, Fahlk acknowledged that he had reported an incorrect serial number to the police, but stated that Rathe had advised him of the error and that he told her to call the police to give them the correct number.

In any event, shortly after Fahlk's call to the police, he traveled to Lincoln to deliver the school district's budget, as required, to the State Department of Education. Also on this date, Fahlk's daughter, Nicole, a freshman at the University of Nebraska at Lincoln, was moving into her dormitory. Fahlk testified that he brought with him to Lincoln his own ImageWriter printer, which he had been using at work, and set it up in his daughter's room. Fahlk's daughter testified that Fahlk did not bring a printer to her room on August 23, 1991, and that the only times Fahlk brought a printer to her room were in September 1991 and on April 5, 1992.

According to Fahlk, his own ImageWriter printer proved to be better suited to the programs he used in his work than was the school district's ImageWriter II printer. Fahlk testified that on September 18, 1991, he again traveled to Lincoln, installed the school district's ImageWriter II printer in his daughter's room, and brought back to his workplace his own ImageWriter printer.

On April 1, 1992, a UN-L police officer searched the dorm room of Fahlk's daughter and questioned her regarding her computer equipment. The following day, Terry Becker, an investigator for the Nebraska State Patrol, met with Fahlk in Fahlk's office. Becker stated that he asked Fahlk if Fahlk was aware of three computer printers which had been delivered on August 22, 1991, and that Fahlk had replied that there were multiple equipment deliveries made and that he did not take care of that sort of thing. Fahlk denied to Becker that he had reported a missing printer to the police. Becker testified Fahlk said that his daughter had possession of a printer belonging to

the school district and that Fahlk had not gotten permission to take the printer to his daughter because, as superintendent, he did not need permission to do so. Becker stated that Fahlk said that he had exchanged printers with his daughter because the school district's ImageWriter II printer was not compatible with the software program relating to teacher contract negotiations and that the exchange was not intended to be permanent.

Fahlk notified the board of education of Becker's visit and informed the members that he would exchange the printers. Fahlk exchanged the printers on April 5, 1992. At trial, Fahlk was unable to explain why the serial number was missing from the ImageWriter II printer after it was returned to the school district.

Becker again visited Fahlk on April 10, 1992. Becker testified that Fahlk then acknowledged that he had taken one of the printers delivered on August 22 and produced a signed checkout sheet for the printer. Becker testified that Fahlk said that he had unpacked the printer at his desk and then kept the printer under his desk in his office from August 23 until the switch with his daughter was made on September 18. Becker stated that Fahlk said that he was unaware that a search had been conducted for the missing printer. Becker testified that Fahlk said that when he was questioned by Rathe on August 23 regarding a missing printer, Fahlk had assumed that Rathe was referring to part of a group of equipment that had been stolen from the school district over the course of the summer.

Fahlk testified that he did not produce the signed checkout sheet during his first interview with Becker because Becker did not ask for it. Fahlk stated that the checkout sheet was in his office, where he was being interviewed by Becker regarding the printer, but that he never thought about showing it to Becker.

Lambrecht testified that in the fall of 1991 he was instructed by Fahlk to devise a computer checkout sheet. Lambrecht stated that the checkout sheet was approved by Fahlk and used by the school district until a new form was designed by Fahlk in May 1992. The checkout sheet which Fahlk gave to Becker on April 10, 1992, was different in form from either version used by the school district during the 1991-92 school year. Fahlk explained that the form he used to check out the ImageWriter II

printer was one that was in use only in his office. Connie Sackles, Fahlk's secretary, testified that she had never seen the file containing Fahlk's checkout sheet until May 1992.

At trial, Fahlk presented expert testimony that the ImageWriter printer was worth more than the ImageWriter II printer. However, the expert also stated that this was true, in part, because the ImageWriter printer cost more when it was new than the ImageWriter II printer does today. The owner's guide for the ImageWriter II printer indicates that it has an expanded memory capacity.

Fahlk was charged with theft by unlawful taking, in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 1989), and with obstructing government operations, in violation of Neb. Rev. Stat. § 28-901 (Reissue 1989). In response to the State's pretrial motion in limine, the trial court prohibited Fahlk from eliciting testimony or presenting evidence to show that the board of education had either condoned or ratified any alleged criminal behavior on the part of Fahlk.

Fahlk was found guilty on both counts and was sentenced to 1 year of probation followed by 30 days in the Otoe County jail.

## ANALYSIS

*Testimony Regarding Intent.*

"A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." § 28-511(1). The dispute in this case centers around Fahlk's intent with regard to the ImageWriter II printer.

On appeal, Fahlk argues that the trial court erred in refusing to give Fahlk the opportunity to present his own testimony regarding his lack of intent to permanently deprive the school district of the use or benefit of its ImageWriter II printer. Fahlk objects to the trial court's rulings with regard to the following examination at trial:

> [Fahlk's counsel:] Mr. Fahlk, when you took the school district's ImageWriter II printer to Lincoln and brought your own ImageWriter back here, was it your intention to keep the school district's property?
> [Fahlk:] No.

[Prosecutor]: Objected to as invading the province of the Jury, and move to strike.

THE COURT: Sustained.

Later, a similar exchange took place:

[Fahlk's counsel:] Did you steal anything from the Nebraska City School District?

[Fahlk:] No.

[Prosecutor]: Objected to as invading the province of the Jury, and move to strike.

THE COURT: Sustained.

In evaluating the trial court's rulings on the proffered testimony, we note that even if the trial court's rulings were erroneous, the substance of Fahlk's disputed testimony was subsequently placed before the jury. Asked if he had had a plan for exchanging the printers back again, Fahlk replied that "it was my intention that after negotiations for the 91-92 contract were completed, to take them back, to reexchange them." In addition, exhibit 28, Fahlk's letter to the board of education informing them of the exchange, was admitted into evidence. The letter explains that the exchange was not intended to be permanent, states that the exchange had never been a secret, and asks that the board of education authorize the continuation of the exchange.

■ Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected. Neb. Evid. R. 103, Neb. Rev. Stat. § 27-103 (Reissue 1989). " ' "Alleged error in the exclusion of offered testimony is of no avail if the same testimony, or testimony to the same effect, had been, or was afterwards, allowed to be given by the witness." ' " Rose v. City of Lincoln, 234 Neb. 67, 77, 449 N.W.2d 522, 529 (1989). Because testimony to the same effect was allowed to be given by Fahlk, no substantial right of Fahlk's was affected. This assignment of error is without merit.

*Exclusion of Nienkamp's Testimony.*

Fahlk argues that the trial court erred in excluding, on relevancy grounds, the testimony of Ann Nienkamp, president of the Nebraska City Board of Education, regarding board authorization of Fahlk's use of the school district's property.

Fahlk made an offer of proof that if Nienkamp were allowed to testify, she would state that

> she and the board of education did in fact charge the defendant with the responsibility for completing budget work, teacher negotiations work, bond issue work, computer acquisition work, and school asbestos removal work in whatever means that he could accomplish those tasks with all due dispatch and that he was authorized and permitted to use his own equipment to accomplish those tasks and that the board of education neither voiced nor indicated an objection and indeed shared and communicated to the defendant a willingness to permit him to do so on terms that would allow the use of his equipment by the school district and equipment owned by the school district of lesser value and lesser utility by him or members of his family at that same time that the school district was using his equipment.

Following the offer of proof, Nienkamp stated, in an examination by the court outside of the jury's presence, that Fahlk had not informed her that he planned to take the ImageWriter II printer to his daughter in Lincoln, and that she had no knowledge of a checkout sheet signed by Fahlk on September 18, 1991. Also outside of the jury's presence, Nienkamp told the prosecutor that all of the board members present at a meeting with the Otoe County Attorney and a Nebraska State Patrol investigator stated that Fahlk had not been given permission to take the printer to Lincoln.

■ "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989).

■ The Nebraska Supreme Court has noted:

> " 'There are two components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is "in issue," that is,

within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . .

" 'The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . . A fact that is "of consequence" is material, and evidence that affects the probability that a fact is as a party claims it to be has probative force. . . . Such evidence often is said to have "logical relevance," while evidence lacking in probative value may be condemned as "remote" or "speculative." ' " Quoting 1 McCormick on Evidence § 185 (John W. Strong 4th ed. 1992).

Probative value is a relative concept; the probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the ultimate issues of the case. *State v. Dixon, supra*; *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

*State v. Lowe*, 244 Neb. 173, 177-78, 505 N.W.2d 662, 667 (1993).

Fahlk argues that he "could not have obstructed justice, or stolen the ImageWriter II printer if he believed at the time he checked it out that he had the permission of the Board of Education to take the printer!" Brief for appellant at 21. We believe that the existence of the board's permission, or the lack thereof, is not a fact of consequence in this case and is therefore not material evidence. The issue in this case was not whether Fahlk took the printer, but, rather, whether he took the printer with the intent to deprive the school district of its use. Furthermore, given the equivocal, and perhaps damaging, content of Nienkamp's proffered testimony, as explored by the court during the offer of proof, such evidence would not be probative of Fahlk's innocence. This assignment of error is without merit.

*Prosecutorial Misconduct.*

Fahlk argues that the trial court erred in allowing the State to

comment and speculate on the failure of Fahlk's wife to testify at the trial. Fahlk objects to the following comment made by the prosecutor in his rebuttal closing argument to the jury:

> Poor Nicole got to go home tonight, but she said [sic] up here and testified that her dad only came down there two times with printers; once after Labor Day — we all know when Labor Day is — and once on April 5. He didn't come down there on [August] 23rd. If he did, there was a third person who's there. You didn't hear from the third person, did you? It's Mrs. Fahlk.

The court overruled Fahlk's objection that the foregoing was an improper argument and denied his request that the court admonish the jury.

■ Fahlk correctly observes that, except for certain circumstances not existing in this case, Nebraska law prohibits one spouse from testifying against the other in a criminal case unless both spouses consent to waive the privilege. See Neb. Evid. R. 505, Neb. Rev. Stat. § 27-505 (Reissue 1989). Furthermore, "[t]he claim of a privilege . . . is not a proper subject of comment by judge or counsel." Neb. Evid. R. 513, Neb. Rev. Stat. § 27-513 (Reissue 1989). Fahlk claims that a "negative, even fatal inference from the State's impermissible reference to Mrs. Fahlk's silence was simply unavoidable." Brief for appellant at 28.

■ " 'When a party has knowledge during trial of irregularity or misconduct, he must timely assert his right to a mistrial.' " *State v. Morrow*, 237 Neb. 653, 661, 467 N.W.2d 63, 69 (1991).

> "[W]hen there occurs in the course of trial a highly prejudicial event which is likely to materially affect the outcome of the trial, the party aggrieved must raise his objection then and move for mistrial. His failure to do so when he reasonably should have known of the prejudicial occurrence constitutes a waiver of the objection."

*State v. Archbold*, 217 Neb. 345, 353, 350 N.W.2d 500, 505 (1984). Although Fahlk objected to the statements of the prosecutor, he did not move for a mistrial. While we do not condone the remarks of the prosecutor, Fahlk's failure to move for a mistrial waives any error there may have been.

Although Fahlk did not properly preserve the error regarding the prosecutor's remarks during closing arguments, we have examined the record for plain error to ensure that no miscarriage of justice was done. See *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993). The Nebraska Court of Appeals has stated:

> "The general rule is that remarks made by the prosecutor in final argument which do not mislead or unduly influence the jury do not rise to a level sufficient to require granting a mistrial." *State v. Fraser*, 230 Neb. 157, 162-63, 430 N.W.2d 512, 515 (1988). Quoting from *State v. Wounded Arrow*, 207 Neb. 544, 300 N.W.2d 19 (1980), in *State v. Bradley*, 236 Neb. 371, 400, 461 N.W.2d 524, 544 (1990), the court said, " 'Before it is necessary to grant a mistrial due to prosecutorial misconduct, the defendant must show that "a substantial miscarriage of justice has actually occurred." ' . . . Similar standards are applicable where one seeks a new trial by raising on appeal the issue of prosecutorial misconduct. . . . [I]f there is some incorrect conduct in a jury trial which, on review of the entire record, did not materially influence the jury in its verdict adverse to a substantial right of the defendant, the error is harmless."

*State v. Harker*, 1 Neb. App. 438, 442-43, 498 N.W.2d 345, 348 (1993).

The jury in the case at bar was instructed that statements, arguments, and questions by the lawyers were not evidence to be considered by the jury. On review of the entire record, we cannot say that the prosecutor's remark misled or materially influenced the jury adverse to a substantial right of Fahlk's. See *id*.

*Rebuttal Testimony.*

Fahlk next asserts that the trial court erred in allowing improper rebuttal testimony from Rathe. On cross-examination, Fahlk denied making telephone calls to Rathe on October 6, 1992, a week before trial. Fahlk stated that he could not recall making calls to Rathe on that date at 3:28 p.m., 4:26 p.m., or 4:34 p.m.

Rathe was called by the State as a rebuttal witness at the end of the trial and was questioned about the telephone calls. She testified that she has a caller identification device attached to the telephone in her home, and she produced three photographs of the device which portrayed Fahlk's telephone number; the date, October 6, 1992; and the time of the calls, 3:28 p.m., 4:26 p.m., and 4:34 p.m. Fahlk's objections, on grounds of relevancy and improper rebuttal, were overruled. Fahlk refused the court's offer for surrebuttal made at this time. Both parties rested. Shortly thereafter, a conference was held outside the jury's presence. The trial court refused Fahlk's subsequent request to present testimony to rebut Rathe's rebuttal testimony. Fahlk's offer of proof stated that if Gene Mercer, a Nebraska City businessman, were permitted to testify, he would say that between 3 and 4:30 p.m. on October 6, 1992, Fahlk was not at his residence, but was with Mercer at Mercer's shop. Another gentleman, Dean Handy, would have testified similarly. Fahlk moved for a mistrial "based on the Court's rulings on admitting the rebuttal evidence, refusing to strike that evidence on the motion, and/or refusing to allow surrebuttal." The motion was denied.

In the context of this trial, it is clear that Rathe's testimony was offered solely to attack Fahlk's credibility by showing that Fahlk's earlier denial of making calls to Rathe's phone number on the afternoon of October 6, 1992, was untrue. Neb. Evid. R. 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 1989), states in relevant part: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his [or her] credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence." Under this rule, Rathe's rebuttal testimony was improper. Rather than specifying a particular basis for exclusion of Rathe's testimony, Fahlk made a continuing objection thereto as irrelevant and improper rebuttal.

The Nebraska Supreme Court has recently stated:

Neb. Evid. R. 103(1)(a), Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1989), provides that an appellant claiming reversible error as the result of admission of evidence must have made "a timely objection . . . stating the specific

ground of objection, if a specific ground was not apparent from the context. . . ." See, also, *Havlicek v. State*, 101 Neb. 782, 784, 165 N.W. 251 (1917) ("[i]t is the duty of counsel to make his [or her] objections so specific that the court may understand the point intended to be raised"); *State v. Todd*, 226 Neb. 906, 416 N.W.2d 13 (1987); *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987).

One function of a proper objection is to direct the court's attention to questioned admissibility of particular evidence so that the court may intelligently, quickly, and correctly rule on the reception or exclusion of evidence. See, *State v. Bissonette*, 145 Vt. 381, 488 A.2d 1231 (1985); *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978); *Fowler v. Bachus*, 179 Neb. 558, 139 N.W.2d 213 (1966); M. Graham, Handbook of Federal Evidence § 103.1 (3d ed. 1991); 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5032 (1977).

*State v. Coleman*, 239 Neb. 800, 811-12, 478 N.W.2d 349, 357 (1992). Although Fahlk expressed a general opposition to Rathe's testimony, he did not state a specific objection by reference to a particular rule or by language contained in an evidential rule, as required by the rules of evidence and case law. See *id*. By failing to make the proper objection, Fahlk has waived the error regarding admission of Rathe's testimony.

As noted above, after both parties had rested, Fahlk argued that although Rathe's testimony was objectionable, he nevertheless wished to counter its effect by an offer of surrebuttal testimony. The court denied this request. Under Neb. Evid. R. 611, Neb. Rev. Stat. § 27-611 (Reissue 1989), the trial judge is granted discretion in connection with the conduct of the trial. Neb. Evid. R. 611(1) states: "The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment." In the context of this trial conducted over 3 days, the trial court did not abuse its discretion by bringing

closure to the incidental debate regarding whether Fahlk called Rathe on the afternoon of October 6, 1992.

*Sufficiency of the Evidence.*

In his final assignment of error, Fahlk argues that the evidence was insufficient to sustain his convictions of theft by unlawful taking and of obstructing government operations. Citing *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992), the Nebraska Supreme Court recently stated that "in criminal cases, circumstantial evidence is to be treated the same as direct evidence, and the State, upon review, is entitled to have all conflicting evidence, direct and circumstantial, and the reasonable inferences which can be drawn from the evidence viewed in its favor." *State v. Covarrubias*, 244 Neb. 366, 374, 507 N.W.2d 248, 253 (1993).

The evidence, which we view favorably to the State, reflects that an all-out search for the missing printer was launched within 20 minutes of its disappearance. Rathe left a note for Fahlk inquiring about the printer. After receiving no response from Fahlk, Rathe directly questioned Fahlk about the printer, showed him a list of the three printers, and told him one was missing. Fahlk told Rathe he had no knowledge of the missing printer. Months later, Fahlk admitted that on the same date that Rathe had questioned him about the missing printer, he had taken it from the kitchen area of the building, unpacked it, and placed it under his desk, where it remained until he exchanged it with the printer in his daughter's dorm room. When Fahlk reported the theft to the police, he gave them an incorrect serial number.

Upon questioning by a State Patrol investigator months later, Fahlk admitted that the printer was under his desk at all times during the search, but stated that he had assumed the missing printer was part of a list of equipment stolen earlier in the summer. Fahlk could not explain why a serial number was not present on the printer when it was returned to the school district. A jury could properly conclude that Fahlk's conduct evidenced an intent to take the printer and to deprive the school district of its property. The evidence was adequate to support Fahlk's conviction of theft by unlawful taking.

■ Fahlk was charged with obstructing government operations because of his action in furnishing to State Patrol Investigator Becker a purported checkout sheet for the ImageWriter II printer.

> A person commits the offense of obstructing government operations if he intentionally obstructs, impairs, or perverts the administration of law or other governmental functions by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

§ 28-901.

■ Under the facts of this case, the State must prove that Fahlk's action in producing for Becker the checkout sheet on April 10, 1992, was an act which obstructed, impaired, or perverted the administration of law or other governmental function.

> A person commits the offense of tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he . . . [k]nowingly makes, presents, or offers any false physical evidence with intent that it be introduced in the pending or prospective official proceeding.

Neb. Rev. Stat. § 28-922 (Reissue 1989).

A jury could find that Fahlk presented false physical evidence to Becker when Fahlk realized that an official proceeding was about to be instituted. When Becker interviewed Fahlk about the printer on April 2, 1992, no mention was made of the checkout sheet. When Becker again interviewed Fahlk a few days later, Fahlk produced a checkout sheet which he claimed had been filled out when he took the printer to his daughter in September 1991. This purported checkout sheet was a different version than that which was used by the school district in September 1991. The form in effect at

that time required the signatures of an administrator and the media specialist. The new form devised by Fahlk in May 1992 required only his own signature. Fahlk's secretary had not seen the equipment loan file containing the checkout sheet for the printer until May 1992. From this evidence, a jury could conclude that the checkout sheet produced by Fahlk after being interviewed by Becker was created by Fahlk as an afterthought once Fahlk realized he was under suspicion. The evidence is sufficient beyond a reasonable doubt to sustain Fahlk's conviction of obstructing government operations.

The judgment of the district court is therefore affirmed.

AFFIRMED.